THE STATE OF OHIO *v.* McGHEE.

(No. 83 CRB 9802—Decided
March 5, 1984.)

Dayton Municipal Court,
Criminal Division.

*Ms. Karla Burtch,* assistant city prosecutor, for plaintiff.
*Mr. John Rion,* for defendant.

MERZ, J.  This case is before the court upon defendant's motion to discharge for lack of speedy trial and for decision on the merits.

### Motion to Discharge

Defendant, Leon G. McGhee, presents a statutory argument for dismissal on the grounds he was arrested on September 17, 1983, and more than ninety days have since passed. In the court's opinion, the police confrontation with McGhee on September 17, 1983 does not even rise to the level of a seizure within the meaning of *Brown* v. *Texas* (1979), 443 U.S. 47, much less a physical arrest. Even if a physical arrest had occurred, the statute, R.C. 2945.71, runs only when charges are pending, and no charges were pending here until December 8, 1983. Defendant's statutory claim is without merit.

Defendant's constitutional claim must also be denied. While defendant's citations of authority are unexceptionable, they do not compel his conclusion.

In the first place, McGhee demonstrates no actual prejudice from delay. He asks the court to assume or speculate about lost witnesses or lost memory. But neither of those things should have happened. Defendant knew on the very night of the alleged incident that he had sold alcohol to a police informant and about what evidence the police had. He was immediately on notice that a case was in preparation. Nothing prevented him from gathering witnesses or making notes to refresh his recollection.

To ask the court to presume prejudice from a ninety-day delay is to ask the court to presume the unconstitutionality of the statute of limitations, R.C. 2901.13(A)(2), which permits prosecutions for misdemeanors to be brought within two years of their commission. No court should presume the unconstitutionality of legislation.

The undersigned judge has followed Judge John M. Meagher's decision in *State* v. *Fauver* (Jan. 20, 1982), Montgomery C.P. No. 80 CR 1555, unreported, and believes it to be good law. But the prosecutorial delay in *Fauver* far exceeds what happened in this case.

### Furnishing Intoxicating Liquor to a Minor

Defendant is charged with violating R.C. 4301.69 by furnishing intoxicating liquor to Sandra Carpenter on September 17, 1983, when she was under twenty-one years of age. Much of the testimony was undisputed. Defendant admits tending bar at the Silver Slipper on September 17, 1983, and selling one screwdriver to Carpenter. Carpenter testified she was only nineteen on that date. The state proved the drink she bought contained the requisite percentage of alcohol.

Carpenter, who was acting on behalf of the Dayton Police, admitted McGhee asked her for identification. She claimed she gave him a picture I.D. without a date of birth. McGhee claimed she said she was twenty-two and presented an I.D. which looked like a driver's license and showed she was twenty-two.

R.C. 4301.639 provides a defense to the offense with which defendant is charged if the court finds:

(1) Carpenter exhibited a driver's license or state I.D. card showing the buyer was of legal age;

(2) that defendant made a good faith effort to check the I.D. by comparing it with Carpenter; and

(3) that defendant had reason to believe Carpenter was of legal age.

For whatever reason, neither the state nor the defendant attempted to place the I.D. card in evidence, so the court cannot find that the card showed she was of legal age. Defendant has not established this defense by a preponderance of the evidence.

The question remaining for decision is whether McGhee had the requisite criminal *mens rea* for conviction where he indisputably made some effort to ascertain Carpenter's age and where her appearance, as the court finds, could lead a reasonable person to conclude she was over twenty-one.

R.C. 4301.69 does not specify a culpable mental state. It merely provides in pertinent part:

"No person shall sell intoxicating liquor to a person under the age of twenty-one years * * *."

R.C. 2901.21(B) provides:

"When the section defining an offense does not specify any degree of culpability, and plainly indicates a purpose to impose strict criminal liability for the conduct described in such section, then culpability is not required for a person to be guilty of the offense. When the section neither specifies culpability nor plainly indicates a purpose to impose strict liability, recklessness is sufficient culpability to commit the offense."

On its face, R.C. 2901.21(B) would seem to require proof of recklessness for a conviction under R.C. 4301.69, for the latter statute does not specify a culpable mental state and certainly does not *expressly* indicate a purpose to impose strict liability.

The precise question of statutory interpretation which must be decided, then, is whether R.C. 4301.69 "plainly indicates a purpose to impose strict criminal liability" without saying so expressly.

Before the new Ohio Criminal Code was adopted, it was clear that a violation of R.C. 4301.69 could be established without proof of a culpable mental state or *mens rea. State* v. *Buttery* (1953), 95 Ohio App. 236 [53 O.O. 168]. While at common law, proof of a culpable mental state was required for at least those criminal offenses *malum in se,* see Perkins, Criminal Law (2 Ed. 1969) 785, this century has seen an explosion of regulatory offenses where strict criminal liability is imposed — liability without respect to fault. Some of the most frequently enacted and upheld of such strict liability statutes are liquor control measures. Sayre, Public Welfare Offenses (1933), 33 Colum. L. Rev. 55. Ohio followed this trend. *Buttery, supra; State* v. *Morello* (App. 1958), 79 Ohio Law Abs. 85, affirmed (1959), 169 Ohio St. 213 [8 O.O.2d 192].

However, the trend toward imposing criminal guilt without fault met universal condemnation from the commentators. They pointed out that strict liability crimes cannot deter because by hypothesis no amount of care by a defendant will excuse the violation. They argued that strict liability does not fit the retribution model because, again by hypothesis, the offender is not at fault in any way. Strict liability offenses degrade the criminal sanction, they noted, by labeling blameless people as criminals. Even when the technique must be used for speedy

prosecutions in high volume cases, they stressed that only fines, and never the truly criminal punishment of incarceration, should be attached. See, *e.g.,* Packer, The Limits of the Criminal Sanction (1968) 121-131; Hart, The Aims of the Criminal Law (1958), 23 Law & Contemp. Probs. 401; Perkins, *supra,* at 784-809; LaFave & Scott, Criminal Law (1972) 218-223, Section 31; Hall, General Principles of Criminal Law (2 Ed. 1960) 336-342.

This scholarly comment was cautiously received by the drafters of the American Law Institute's Model Penal Code (1962). The code as drafted would force the legislature to be quite conscious when it creates strict liability offenses; a purpose to do so would have to "plainly appear." Section 2.05(1)(b).

In adopting R.C. 2901.21(B), the Ohio Legislature was clearly influenced by the Model Penal Code; its chosen language is a direct parallel to Section 2.05(1)(b). In addition, the General Assembly apparently wished to adopt a uniform statutory interpretation test to replace the variety of tests Ohio courts had used in the past to determine if strict liability was intended. Aplin, Dowd, Gilday & Metz, 1 Anderson's Ohio Criminal Practice & Procedure (1971) 639, Section 51.3.

Prior to adoption of the new code, legislative silence on *mens rea* had been interpreted to indicate a purpose to impose strict liability. *State* v. *Lisbon Sales Book Co.* (1964), 176 Ohio St. 482 [21 O.O.2d 455]. It has been argued that the adoption of R.C. 2901.21(B) does not change the result in *Lisbon Sales Book Co.,* that mere legislative silence shows an intent to adopt strict liability. Aplin et al., *supra.*

This court cannot accept that argument, for it essentially means the legislature did nothing when it adopted R.C. 2901.21(B). If the law was not to be changed, why adopt what amounts to a uniform rule of statutory interpretation?

The better approach, this court feels, is to give effect to the legislature's pur-pose in enacting R.C. 2901.21(B). If no *mens rea* is specified, recklessness will be an element of an offense, unless the legislature's purpose to impose strict liability appears expressly or by plain implication.

This rule is consistent with the decisional law since R.C. 2901.21(B) was adopted. In *State* v. *Hafle* (1977), 52 Ohio App. 2d 9 [6 O.O.3d 5], the court of appeals applied R.C. 2901.21(B) to interpreting the cruelty to animals statute, R.C. 959.13(A), which provides:

"No person shall overwork, overdrive, overload, or torture an animal, deprive one of necessary sustenance * * *."

The statute nowhere specifies a *mens rea* or expressly imposes strict liability; its enactment predates R.C. 2901.21(B). Defendant argued recklessness was a required element. The court of appeals found there was sufficient evidence of recklessness in the testimony, inferentially accepting defendant's argument.

In *State* v. *Wac* (1981), 68 Ohio St. 2d 84 [22 O.O.3d 299], the Supreme Court was called upon to apply R.C. 2901.21(B) to two gambling statutes. R.C. 2915.02(A) provides in part:

"No person shall:

"(1) Engage in bookmaking or knowingly engage in conduct that facilitates bookmaking;"

R.C. 2915.03(A) provides:

"No person, being the owner or lessee, or having custody, control, or supervision of premises, shall:

"(1) Use or occupy such premises for gambling in violation of section 2915.02 of the Revised Code;

"(2) Recklessly permit such premises to be used or occupied for gambling in violation of section 2915.02 of the Revised Code."

The Supreme Court reasoned that when the legislature explicitly inserted a culpable mental state in one part of these prohibitions, its omission from the other part was a plain indication of intent to impose strict liability.

At first blush, this might appear to endorse the view that *Lisbon Sales Book Co.* survives the adoption of R.C. 2901.21 (B). In fact, *Lisbon Sales Book Co.* is far broader than *Wac.* The legislature adopted both subsections of R.C. 2915.03 (A) at the same instant. In that case, it is logical to infer some meaning from silence in one subsection and express provision of *mens rea* in the other. If *Lisbon Sales Book Co.* were still the rule, hundreds or thousands of instances of legislative silence would all be interpreted as having the same meaning, as expressing the same intent. That would virtually amount to finding there was no legislative purpose in adopting R.C. 2901.21(B).

These questions are not of constitutional dimensions, at least as yet. By adopting R.C. 2901.21(B), the legislature has permitted the courts to avoid the difficult question of whether serious criminal punishment can be imposed without culpability. But those questions are obvious: if a person cannot be imprisoned for even a day without the assistance of counsel, does not the same guarantee of fundamental fairness suggest he must be culpable? See *State* v. *Foreman* (M.C. 1978), 7 O.O. 3d 230.

Indeed, if the legislature finds this court's reading of R.C. 2901.21(B) inaccurate, it has a sure and ready remedy. It can amend that statute to say that silence means strict liability, thereby expressly enacting *Lisbon Sales Book Co.* Or it could, whenever intending to impose strict liability, use this form: "Without regard to culpability, no person shall * * *."

In accordance with this interpretation, the court finds R.C. 4301.69 requires a showing of recklessness. Upon the evidence adduced, the state has not proven McGhee reckless beyond a reasonable doubt.

Accordingly, defendant is found not guilty and is discharged.

*Defendant not guilty.*