BERTOLINO, ADMINISTRATRIX, *v.* INDUSTRIAL COMMISSION OF OHIO.

[Cite as Bertolino *v.* Indus. Comm. (1989), 43 Ohio St. 3d 44.]

(No. 88-1703—Submitted January 10, 1989—Decided May 17, 1989.)

*Roetzel & Andress, Timothy J. Ochsenhirt, Kenneth L. Wittenauer* and *Jonathan D. Fishbane,* for petitioner.

*Anthony J. Celebrezze, Jr.,* at-torney general, *Merl H. Wayman* and *Jeffery W. Clark,* for respondent.

*Per Curiam.* This court has original jurisdiction to issue writs of procedendo. Section 2(B)(1)(e), Article IV, Ohio Constitution. The writ is an extraordinary remedy and is an order from a court of superior jurisdiction to a tribunal of inferior jurisdiction, com-manding the latter to proceed to judg-ment. *State, ex rel. Garnett,* v. *Lyons* (1975), 44 Ohio St. 2d 125, 73 O.O. 2d 440, 339 N.E. 2d 628. Such high writs have customarily been available to compel the Industrial Commission to act on a claim. See, *e.g., State, ex rel. Cezkovsky,* v. *Indus. Comm.* (1932), 126 Ohio St. 39, 40, 183 N.E. 865 (Mar-, shall, C.J., concurring). However, the writ will not be granted unless there is a clear legal right to such relief. *State, ex rel. Smith,* v. *Friedman* (1970), 22 Ohio St. 2d 25, 51 O.O. 2d 41, 257 N.E. 2d 386.

In the instant case, the parties, for reasons of their own, made a full, final and binding agreement that the req-uisite elements of an "intentional tort" existed either under statutory law, R.C. 4121.80, or the common law pro-nounced by this court in *Jones* v. *VIP Development Co., supra.* Whether that issue is subject to further considera-tion, or is settled, is not before us, in that no questions pertaining to such have been presented for disposition in the instant petition.

The remaining issue between the parties is the amount of damages to be awarded. It is clear from the record that both the parties and the trial court were of the opinion that the jury would not decide the issue and that, instead, it would be determined by the In-dustrial Commission of Ohio. This necessarily hinged upon their view that R.C. 4121.80(D) was applicable and controlling. This statute states, in per-tinent part, as follows:

"* * * If the court determines that the employee or his estate is entitled to an award under this section and that determination has become final, the industrial commission shall, after hearing, determine what amount of damages should be awarded."

Of course, this provision is applicable in the instant case only if there is no right to a jury trial on the issue of damages. More specifically, the issue, as framed by the trial court, is whether the right to a jury trial on this issue may be abrogated retroactively by R.C. 4121.80(H)'s plain assertion that the section is to be so applied.

In *Kneisley* v. *Lattimer-Stevens Co.* (1988), 40 Ohio St. 3d 354, 533 N.E. 2d 743, we addressed this question under the two-step analysis set forth in *Van Fossen* v. *Babcock & Wilcox Co.* (1988), 36 Ohio St. 3d 100, 522 N.E. 2d 489, paragraphs one, two and three of the syllabus, and held that such retroactive application of R.C. 4121.80(D) violated Section 28, Article II of the Ohio Constitution. *Kneisley, supra,* at 357, 533 N.E. 2d at 746-747. Recognizing the legislative intent, clearly expressed in R.C. 4121.80(H), that all the provisions of R.C. 4121.80 could be applied retrospectively, see R.C. 1.48, the court considered whether R.C. 4121.80(D) was substantive or remedial. *Id.* at 356, 533 N.E. 2d at 745-746. We held that subsection (D) totally destroys the right to a jury trial in intentional tort actions at common law, and inasmuch as the right to a jury trial is substantive in nature, *Cleveland Railway Co.* v. *Halliday* (1933), 127 Ohio St. 278, 188 N.E. 1, subsection (D) violates the ban on retroactivity of Section 28, Article II. *Kneisley, supra.*

Accordingly, there yet exists a right to a jury trial for all cases arising prior to the effective date of R.C. 4121.80. Consequently, there is, in all such cases, inclusive of the case at bar, no applicable law requiring the Industrial Commission to act in the matter. Its jurisdiction not being compelled, there is no legal right to the remedy sought.

Accordingly, we must deny the writ.

*Writ denied.*

MOYER, C.J., HOLMES, WRIGHT and H. BROWN, JJ., concur.

SWEENEY, DOUGLAS and RESNICK, JJ., dissent.

DOUGLAS, J., dissenting. The case before us presents the perfect fact pattern as to why I have maintained that R.C. 4121.80 is legislation that was designed by the General Assembly to apply to so-called intentional torts arising during the course of employment but cannot, notwithstanding the action of the General Assembly, in fact, apply to workers' compensation matters. An intentional tort is an activity that takes place outside the employment relationship (albeit during the course of employment) and thereby places the parties not in a position of employer-employee but, instead, in the position of alleged intentional tortfeasor and victim. See *Taylor* v. *Academy Iron & Metal Co.* (1988), 36 Ohio St. 3d 149, 155-163, 522 N.E. 2d 464, 470-477 (Douglas, J., dissenting), and *Kunkler* v. *Goodyear Tire & Rubber Co.* (1988), 36 Ohio St. 3d 135, 140-141, 522 N.E. 2d 477, 482-483 (Douglas, J., concurring). I continue to adhere to that position based upon the theory of *Blankenship* v. *Cincinnati Milacron Chemicals* (1982), 69 Ohio St. 2d 608, 23 O.O. 3d 504, 433 N.E. 2d 572; *Jones* v. *VIP Development Co.* (1984), 15 Ohio St. 3d 90, 15 OBR 246, 472 N.E. 2d 1046, and the explicit "employer-employee" lan-

guage of R.C. 4121.80. In fact, based upon the facts of this case and the majority opinion herein, that position becomes even more clearly mandated. Accordingly, I would say in this case that R.C. 4121.80 is inapplicable to alleged intentional torts arising during the course of employment. The trial court involved in this case and other trial courts could then proceed to hear intentional tort cases under the intentional tort tenets of the common law and the Restatement of the Law principles previously adopted by this court.

Since a majority of this court has not yet adopted this theory of the law, it becomes necessary to review this case and particularly the discussion and holding of the majority. In doing so, I believe a number of questions should be answered before we embark on the decision-making process. Failing to do so will leave the trial court in this case, the parties, and other litigants and trial courts confused as to what we are holding. To accomplish the answering of these questions, I would order that an alternative writ be issued requiring the Industrial Commission to show cause why we should not order the commission to determine damages pursuant to R.C. 4121.80(D). The commission, the petitioner in this case, and appropriate *amici* on both sides of each issue could then fully brief the questions and this court would then be in a better position to properly decide these important issues.

The case before us presents a number of issues of first impression. Petitioner's decedent's death occurred during the course of his employment when he was electrocuted on a scissor lift. The petitioner filed a complaint in the United States District Court. Petitioner filed three amended complaints, each adding new defendants and new causes of action. The Industrial Com-

mission was never named a defendant in any of the complaints.

Petitioner's decedent's death occurred on August 29, *1984*. On August 22, *1986*, Am. Sub. S.B. No. 307, passed by the General Assembly, became effective. R.C. 4121.80 was created.

While petitioner's case was pending, counsel for Wheeling-Pittsburgh Steel Corporation ("employer" and the underlying defendant in petitioner's case in the trial court) wrote to the commission requesting the commission's participation in settlement discussions between the petitioner and employer. The commission was placed on notice as to the pending case. By letter of April 21, 1987, the commission responded, in part, that, "[r]egarding your inquiry concerning appeals of intentional tort cases, the commission can only become involved in the damage issue when a determination of liability becomes final. Until such determination, the commission will not become involved." Thus, the commission declined to intervene in any way in the underlying suit. In the same letter, the commission said: "* * * [t]he commission's role is limited to a determination of damages after the courts have made a final determination regarding employer liability. * * *"

Subsequent to a previous order of the trial court, ruling on the "intentional tort" standard to be used during trial and the question of whether petitioner was entitled to a jury trial, the trial began. On the third day of trial, the parties entered into the stipulation referenced in the majority opinion. The court entered judgment and ordered that the petitioner could proceed to the Industrial Commission for a damage determination pursuant to R.C. 4121.80. The petitioner did so and the commission refused to entertain the application. The petitioner then

brought this action to force the commission to proceed to hearing.

I write now because I am alarmed at certain statements, findings and the ultimate judgment of the majority. Is it fair to now expose the employer to a much larger damage judgment when the stipulation was obviously made by the parties based upon the current financial situation of the employer (Chapter 11 of the Bankruptcy Code) and the limited recovery provided for in R.C. 4121.80 which would, of course, be paid out of the fund provided for this purpose?

What about the fact that *Kneisley* v. *Lattimer-Stevens Co.* (1988), 40 Ohio St. 3d 354, 533 N.E. 2d 743, relied upon by the majority, does not really discuss or decide the cap on damages question raised under R.C. 4121.80(D)? That case involved the question of jury trial — not damages. Thus, in effect, are we deciding today the real question of whether the abrogation of a jury trial can be accomplished by the General Assembly either retrospectively *or* prospectively? It is, of course, my view that we should be deciding this issue and I have expressed my feelings on the subject in my concurrence in *Kneisley*. The right to trial by jury may not be impaired. See, further, *Schneider* v. *Jefferson Smurfit Corp.* (1988), 42 Ohio App. 3d 53, 536 N.E. 2d 691; and *Bishop* v. *Hybud Equip. Corp.* (1988), 42 Ohio App. 3d 55, 536 N.E. 2d 694.

Further, are we mandating that parties in these types of cases (pre-August 22, 1986) *must* have a jury trial? Here the parties stipulated as to liability which, in effect, waived trial by jury, advisory or otherwise, and thereby negated the trial judge's ruling that the petitioner was not entitled to trial by jury. Didn't the parties have a right to do this in this case — or is this case different from all others?

Even more interesting is whether the Industrial Commission has proper standing to raise the question of retrospective application, given that the commission is a creature of the General Assembly which has informed the commission that the law to be followed is R.C. 4121.80. This is especially so since neither of the *real* parties in interest, the employer or petitioner, has raised the issue and the commission, when invited to participate in the underlying case, declined to become involved notwithstanding that it had the right to do so under Fed. R. Civ. P. 24. Is not the commission now bound as to the factual and legal conclusions reached by the trial court? Does not the "law of the case" doctrine mean anything?

In *State, ex rel. Gaddis,* v. *Indus. Comm.* (1938), 133 Ohio St. 553, 11 O.O. 266, 15 N.E. 2d 146, paragraph two of the syllabus, this court held:

"Where judgment upon such finding is entered by the Court of Common Pleas and certified to the Industrial Commission for payment in accordance with law, it is the duty of the commission to recognize it as an award of some disability compensation. Unless such award is vacated or reversed by a court of competent jurisdiction, or its operation suspended by proceedings in appeal, *the commission must proceed to exercise its discretion* by inquiring into the extent of disability and determining the amount of compensation to be paid therefor." (Emphasis added.)

Here, there was *no* appeal from the trial court's judgment. In fact, the parties agreed to waive any right of appeal.

In *Sponseller* v. *Sponseller* (1924), 110 Ohio St. 395, 399-400, 144 N.E. 48, 49, this court said:

"* * * Where the court has jurisdiction of both the subject-matter and the parties, and a consent decree

has been entered by the court, such a decree is not even subject to direct attack, except for irregularity or fraud in its procurement. * * *"

There is no hint of any irregularity or fraud here. In fact, a fair reading of Judge Dowd's orders contained in the record indicates that he did not just perfunctorily approve the parties' stipulation and settlement. After three days of trial and substantial research, it appears, from the extensive pre-trial order, that the well-respected trial judge was prepared to make a finding on behalf of petitioner. Now, since there is no way to directly attack the judgment of the trial court, respondent-commission seeks to collaterally attack the judgment by refusing to proceed in accordance with the law as mandated by the General Assembly. Of course, collateral attacks on judgments are countenanced even less than direct attacks, absent a direct and proper appeal.

There are many other issues that should be raised concerning the ultimate impact of the majority decision, but those raised will suffice to make the point. What we have before us is an action seeking a writ of procedendo. "* * * [P]rocedendo is an order requiring a lower court to proceed to judgment and not an order directing a lower court to make a judgment for or against a particular side or issue." *State, ex rel. Garnett,* v. *Lyons* (1975), 44 Ohio St. 2d 125, 126, 73 O.O. 2d 440, 441, 339 N.E. 2d 628, 630. Procedendo is an order requiring an inferior tribunal to proceed according to a judgment rendered. In this action now before us, we should not be determining the *merits* of the case. They have already been determined by the trial court.

If the commission thinks the trial court is wrong or believes that any case of this court allows it not to proceed, then the commission should hold a hearing, make such a determination, and memorialize its decision in an opinion and final order, thereby permitting the aggrieved party to properly appeal and affording this or another court the opportunity to decide the serious issues involved. This could then be accomplished after a full and complete briefing of the questions raised with the aggrieved party being afforded a hearing. As an alternative, this court, as set forth, *supra,* could grant an alternative writ and thereby accomplish the same objectives. In the absence of such a procedure, I am glad I am not the trial judge who must now figure out how this court would expect him to proceed.

Accordingly, notwithstanding that I believe, for the reasons stated, that R.C. 4121.80 does not apply to cases of alleged intentional torts, I must respectfully dissent on the basis that the majority opinion is fundamentally flawed and proper procedure is not being followed.

SWEENEY and RESNICK, JJ., concur in the foregoing dissenting opinion.