COX ET AL., APPELLEE AND CROSS-APPELLANT, *v.* STOLLE CORPORATION, APPELLANT AND CROSS-APPELLEE

(No. 11745—Decided
September 4, 1990.)

*Dennis M. McCarthy, William C. Becker* and *James B. Hochman,* for appellee and cross-appellant.

*William H. Anderson* and *Holly B. Collinsworth,* for appellant and cross-appellee.

BROGAN, J. Robert R. Cox brought suit against his employer, Stolle Corporation, for an intentional tort, alleging that it had deliberately removed a safety guard from a machine which injured him. A jury trial was held on the issue of liability only, after the trial court ruled that it was precluded from ruling on damages by R.C. 4121.80(D). The jury found in favor of Cox. This matter is now before the court on Stolle's timely notice of appeal from said judgment, and Cox's cross-appeal. Stolle asserts three assignments of error, claiming that: (1) the trial court lacked jurisdiction over this matter, (2) there should not have been a jury trial on liability, and (3) the judgment was against the manifest weight of the evidence. Cox asserts two assignments of error, both of which claim that he was entitled to a jury determination of damages. For reasons stated more fully below, we accept Cox's contentions and reject Stolle's latter two arguments. However, we find that the trial court did lack subject matter jurisdiction, and therefore remand this case with instructions that it be dismissed.

Cox was employed by Stolle in its Sidney, Ohio, plant as a member of a six-person assembly line crew. His crew operated one of two coil coating lines in the factory. The coil coating line consists of a four-hundred-fifty-foot series of large metal rollers through which lengthy strips of aluminum pass and are wound onto large spools at the opposite end of the machine, called the accumulator. While the strips of aluminum travel through the coil coater they are painted and passed through an oven so that the paint is baked onto the metal.

At approximately 2:00 a.m. on August 24, 1986 a strip of aluminum passing through the coil coater tore and became tangled in the twenty-six rollers comprising the accumulator part of the machine. When the strip

jammed, the emergency switch was activated causing *every* roller on the machine to stop moving. Testimony indicated that it was unavoidable for a strip of aluminum to occasionally tear and become jammed. When this happened, it was necessary for the line crew to manually pull the aluminum strips out of the accumulator and rethread the spools. As long as the emergency switch was activated, it was impossible to pull the aluminum out of the accumulator. Therefore, the coil coater was shut down and the emergency switch was released. This caused *only* the "number 4 bridle roller" to resume turning, albeit slowly, while the rest of the rollers remained still.

The bridle roller was operated by the tension control switch. The coil coater was designed so that when the switch was in the "on" position, the bridle roller would turn slowly, keeping tension on the line so that the aluminum would remain taut throughout the machine. If placed in the "off" position, the bridle roller was supposed to cease turning; however, this would cause the line to droop, thus reducing to slag any aluminum that might still be in the oven by dropping it too close to the heat source. The tension control switch on this coil coater, however, had been deliberately bypassed so that it would effectively always be in the "on" position. Testimony indicated that the switch had not functioned for at least fifteen years, and that the assembly line crews assumed that the bridle roller was supposed to continue turning during attempts to unsnag the line.

The crew began trying to free the tangled aluminum. Having had little experience on this machine, Cox was told to stand back and watch while the other crew members rethreaded the line. After about forty-five minutes of observing, Cox decided to help a crew member named Tony Wells who was standing on top of the accumulator trying to pull out the entangled aluminum. While climbing up to Wells' position, Cox began to slip and stuck out his left arm to regain his balance. Unfortunately, what he tried to balance himself against was the number 4 bridle roller. Cox's arm was dragged between the metal rollers and crushed, necessitating its amputation.

Upon these facts, the jury found that Stolle was liable for Cox's injuries. Ordinarily, a judgment on liability alone where a genuine issue on damages remains is not a final appealable order. *N.R.I. Co.* v. *N.R. Dayton Mall, Inc.* (Dec. 13, 1989), Montgomery App. No. 11535, unreported. However, in the instant matter the trial court indicated that it would refer the issue of damages to the Industrial Commission pursuant to R.C. 4121.80(D). As far as the trial court was concerned, a judgment on liability alone disposed of the entire case and left it with no jurisdiction for further proceedings. Therefore, under *Lantsberry* v. *Tilley Lamp Co.* (1971), 27 Ohio St. 2d 303, 56 O.O. 2d 179, 272 N.E. 2d 127, the judgment in question is a final appealable order, and properly before the court.

For its first assignment of error Stolle asserts that:

"The trial court erred in denying defendant's motion to dismiss for lack of subject matter jurisdiction."

Cox's claim was brought under R.C. 4121.80(A), which states in pertinent part:

"If injury, occupational disease, or death results to any employee from the intentional tort of his employer, the employee or the dependents of a deceased employee have the right to receive workers' compensation benefits under Chapter 4123. of the Revised Code and have a cause of action against the employer for an excess of damages over the amount received or receivable under Chapter 4123. of the Revised Code and Section 35 of Article

II, Ohio Constitution, or any benefit or amount, the cost of which has been provided or wholly paid for by the employer. *The cause of action shall be brought in the county where the injury was sustained or the exposure primarily causing the disease alleged to be contracted occurred. * * *"* (Emphasis added.)

Cox was injured in Shelby County but brought suit in Montgomery County. The trial court overruled Stolle's motion to dismiss the claim as having been brought in the wrong county. Stolle argues that the language pertaining to bringing an action in the county where the injury occurred is mandatory and jurisdictional. We agree.

Section 4(B), Article IV, Ohio Constitution provides that:

"The courts of common pleas and divisions thereof shall have such original jurisdiction over all justiciable matters and such powers of review of proceedings of administrative officers and agencies as may be provided by law."

The Supreme Court of Ohio has interpreted this to mean that jurisdiction is fixed by statute, and common pleas courts may exercise only such jurisdiction as is provided for by the General Assembly. *Central Ohio Transit Auth.* v. *Transport Workers Union of America, Local 208* (1988), 37 Ohio St. 3d 56, 60, 524 N.E. 2d 151, 155; *Seventh Urban, Inc.* v. *University Circle* (1981), 67 Ohio St. 2d 19, 22-23, 21 O.O. 3d 12, 14, 423 N.E. 2d 1070, 1073; *State, ex rel. Miller,* v. *Keefe* (1958), 168 Ohio St. 234, 6 O.O. 2d 18, 152 N.E. 2d 113, paragraph one of the syllabus. Therefore, the legislature had the authority to vest jurisdiction over intentional torts committed by em-

ployers as it saw fit. It is irrelevant for purposes of jurisdiction that a cause of action for intentional tort existed at common law. The General Assembly has the power to limit or change the jurisdiction of causes of action vested in common pleas courts at common law. See, *e.g., Miller, supra; Von Hoene* v. *State* (1985), 20 Ohio App. 3d 363, 20 OBR 467, 486 N.E. 2d 863; *Buerger* v. *Office of Public Defender* (1984), 17 Ohio App. 3d 29, 17 OBR 82, 477 N.E. 2d 1170.

Cox argues that the direction that claims be brought where the injury occurred relates to venue rather than jurisdiction. We do not agree. The statute's use of the word "shall" is clearly mandatory in nature. Provisions on venue, by contrast, use discretionary language such as "may." See, *e.g.,* Civ. R. 3. Guidance on this issue may also be found in the interpretation of statutes relating to workers' compensation, even though this action is based on intentional tort. R.C. 4123.519 states in pertinent part:

"The claimant or the employer may appeal a decision of the industrial commission or of its staff hearing officer * * * *to the court of common pleas of the county in which the injury was inflicted * * *."* (Emphasis added.)

The Supreme Court has held this language, which is almost identical to that of R.C. 4121.80, to be jurisdictional instead of relating only to venue. *Hartsock* v. *Chrysler Corp.* (1989), 44 Ohio St. 3d 171, 541 N.E. 2d 1037. In response to *Hartsock,* and recognizing that the "county of injury" language was jurisdictional, the legislature amended R.C. 4123.519 to alleviate the potentially disastrous consequences of filing in the wrong county.[1] No such saving language is found in R.C.

---

[1] R.C. 4123.519 reads in pertinent part: "* * * In the event that no common pleas court has jurisdiction for the purpose of an appeal by the use of the jurisdictional requirements described in this paragraph, the appellant then may resort to the venue

4121.80. We can only conclude that the General Assembly intended that the provision as to county of origination remains jurisdictional in R.C. 4121.80.

Since Cox's injury occurred in Sidney, Ohio, only the Common Pleas Court of Shelby County has jurisdiction over this matter. Civ. R. 12(H)(3) mandates that cases brought in a court which lacks jurisdiction over the subject matter must be dismissed. Therefore, Stolle's first assignment of error is found to be well-taken and will be sustained. This matter will be remanded to the trial court with instructions that it be dismissed.

Although our determination of Stolle's first assignment of error renders all others moot, we are compelled to rule upon them under App. R. 12(A).

For its second assignment of error Stolle asserts that:

"The trial court erred in permitting a jury trial under the provisions of Ohio Revised Code Sec. 4121.80."

Cox asserts as his first and second cross-assignments of error:

"The trial court erred in denying Robert R. Cox a jury trial on damages.

"Revised Code Sec. 4121.80 is unconstitutional to the extent it was applied to deny Robert Cox a jury determination of his damages."

Since all three of these alleged errors involve taking resolution of this particular type of intentional tort away from the jury, we will address them together.

The statute under scrutiny, R.C. 4121.80(D), reads in pertinent part:

"In any action brought pursuant to this section, the court is limited to a determination as to whether or not the employer is liable for damages on the basis that the employer committed an intentional tort. If the court determines that the employee or his estate is entitled to an award under this section and that determination has become final, the industrial commission shall, after hearing, determine what amount of damages should be awarded. * * *"

By its own terms, this statute removes from the jury's consideration the issue of damages. The Supreme Court has ruled that the term "the court" means a judge sitting without a jury, thus eliminating the right to a jury trial in these matters altogether. *Kneisley* v. *Lattimer-Stevens Co.* (1988), 40 Ohio St. 3d 354, 357, 533 N.E. 2d 743, 747. The *Kneisley* court was presented with the question of whether this provision of R.C. 4121.80 could be retroactively applied (which it could not because it affected a substantial right, *id.* at 357, 533 N.E. 2d at 747), not whether it was constitutional in general. That question is, however, presented to this court today, and we answer in the negative.

Section 5, Article I, Ohio Constitution reads in pertinent part, "The right of trial by jury shall be inviolate * * *." This has long been interpreted to mean that a right to a jury trial is guaranteed in all actions in which such a right existed at common law prior to the adoption of the Ohio Constitution. *Kneisley, supra; Belding* v. *State, ex rel. Heifner,* (1929), 121 Ohio St. 393, 169 N.E. 301. Thus, if an employee had a right to a jury when he sued his employer for intentional tort at common law, he retains that right today by virtue of Section 5, Article I, and the General Assembly cannot remove that right by mere statute.

provisions in the Rules of Civil Procedure to vest jurisdiction in a court.

"* * *

"If an action has been commenced in a court of a county other than a court of a county having jurisdiction over the action, the court, upon notice by any party or upon its own motion, shall transfer the action to a court of a county having jurisdiction."

The Supreme Court has repeatedly determined that employees had a right at common law to sue employers for intentional tort committed at the work place. In an early workers' compensation case, it was held that workers *retain* their common-law right to sue their employers in intentional tort for violation of a safety statute. *State, ex rel. Engle,* v. *Indus. Comm.* (1944), 142 Ohio St. 425, 429, 27 O.O. 370, 371-372, 52 N.E. 2d 743, 746. It has also been held that workers had a preconstitutional cause of action at common law against employers where fault was alleged and proved. *Van Fossen* v. *Babcock & Wilcox Co.* (1988), 36 Ohio St. 3d 100, 109, 522 N.E. 2d 489, 498. Finally, in *Kneisley, supra,* at 356-357, 533 N.E. 2d at 746, the Supreme Court discussed at length the genesis of R.C. 4121.80 and determined that it evolved from the common-law action for trespass, concluding that "* * * the right to a jury trial in trespass actions existed in this state at common law, and now extends to its progeny — in this case, intentional tort actions." *Id.* at 357, 533 N.E. 2d at 746. It cannot be said that this was mere dictum because a determination that the appellant had a substantive right to a jury trial was necessary for a determination that R.C. 4121.80 could not be retroactively applied.

Two of our sister courts have held that R.C. 4121.80(D) is unconstitutional to the extent that it removes the right to a jury trial on the issue of liability. *Ulman* v. *Clyde Super Valu* (Sept. 22, 1989), Sandusky App. No. S-88-48, unreported; *Palcich* v. *Mar Bal, Inc.* (Dec. 24, 1987), Geauga App. No. 1394, unreported.

Recently, the Ohio Supreme Court decided the case of *State, ex rel. Carpenter,* v. *Indus. Comm* (1990), 50 Ohio St. 3d 85, 552 N.E. 2d 645. In that case Carpenter filed suit in Madison County against his employer alleging his employer had committed an intentional tort against him. The jury awarded Carpenter $425,000 and Carpenter then demanded that the Industrial Commission pay him the amount of the judgment. When the commission refused payment, Carpenter filed a complaint in mandamus in the Ohio Supreme Court to compel the commission to pay the $425,000. In a *per curiam* opinion, the majority stated the following at 86, 552 N.E. 2d at 646:

"R.C. 4121.80(D) gives the commission exclusive jurisdiction to determine damages when a claimant seeks to recover thereunder. Damages here, however, were set by a jury. In *Kneisley* v. *Lattimer-Stevens Co.* (1988), 40 Ohio St. 3d 354, 533 N.E. 2d 743, and *Bertolino* v. *Indus. Comm.* (1989), 43 Ohio St. 3d 44, 538 N.E. 2d 1040, we held that R.C. 4121.80(D) could not be retroactively applied to destroy a claimant's ability to have a jury calculate damages. The parties at bar, however, have misconstrued the parameters of retroactivity.

"The operative date for judging retroactivity is the date the intentional tort action was filed, not when the tort allegedly occurred. R.C. 4121.80(H) specifically states:

" 'This section applies to and governs *any action* based upon a claim that an employer committed an intentional tort against an employee *pending in any court on the effective date of this section* and all claims or actions filed on or after the effective date.' (Emphasis added.) See, also, *Kneisley* and *Bertolino, supra.*

"*In the case at bar, there is no basis for avoiding the application of R.C. 4121.80.* Relator's intentional tort claim was first raised in his third amended complaint which was filed more than one year after the statute's effective date. Indeed, even if the

amendment related back to its initial complaint, the initial complaint was filed on December 23, 1986, some four months after R.C. 4121.80 became effective. Thus, regardless of which date is used, there was no intentional tort 'action * * * pending in any court on the effective date of this section [August 22, 1986].' Accordingly, R.C. 4121.80(D) applies and the claimant is bound by the commission's exclusive authority over the amount of damages." (Emphasis added.)

In a vigorous dissent, Justice Douglas wrote the following at 87, 552 N.E. 2d at 647:

"In the alternative, since the majority finds that R.C. 4121.80 is applicable to this case, I would hold the statute unconstitutional in its entirety for the reasons stated in my dissent in *Taylor* v. *Academy Iron & Metal Co.* (1988), 36 Ohio St. 3d 149, 162, 522 N.E. 2d 464, 476. By saying that R.C. 4121.80 applies to this case, the majority, unwittingly I hope — *but I fear otherwise — is saying that relator was not entitled to a jury trial in his intentional tort action, and by its action, the majority sub silentio collaterally vacates relator's $425,000 verdict.* Unfairness in these cases has just reached its zenith. I dissent!"

R.C. 4121.80 became effective on August 22, 1986 and there is no issue of retroactivity because the complaint alleged that the plaintiff was injured on August 24, 1986 and this action was filed on August 24, 1987.

In *Carpenter,* the Ohio Supreme Court clearly held that the claimant was bound by the commission's exclusive authority over the determination of damages. Historically, the right to a jury trial has included the individual's right to the jury's determination of *both* liability and damage issues.

The Ohio Supreme Court in *Carpenter* did *not,* however, directly decide the constitutionality of R.C. 4121.80 and its provisions for elimination of the jury trial for actions filed after the effective date of the new legislation.

We believe that our sister courts of appeals in Sandusky and Geauga Counties have correctly determined the statute to be unconstitutional in the elimination of the jury trial. We join in their holdings. Stolle's second assignment is overruled. Cox's cross-assignments are sustained.

Stolle asserts as its third assignment of error that:

"The jury's verdict that the Stolle Corporation had committed an intentional tort is erroneous and against the manifest weight of the evidence."

We do not agree.

It is well-established that:

"Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co.* v. *Foley Construction Co.* (1978), 54 Ohio St. 2d 279, 8 O.O. 3d 261, 376 N.E. 2d 578, syllabus.

Stolle's first argument is that Cox did not prove that it intentionally injured him. R.C. 4121.80(G)(1) states in pertinent part:

"Deliberate removal by the employer of an equipment safety guard * * * is evidence, the presumption of which may be rebutted, of an act committed with the intent to injure another if injury * * * occurs as a direct result."

Setting aside for the moment whether the tension control switch was a safety guard and whether Stolle removed it, it is uncontroverted that said device was removed. Therefore, the presumption of intention was in effect. However, Stolle argues that it rebutted this presumption by presenting various employees who testified

that they would have removed the bypass of the tension control switch if they had known of its existence. We do not believe that this is enough to make the jury verdict unreasonable. The jury may well not have believed this testimony, and would have been within its prerogative in rejecting it.

R.C. 4121.80(G)(1) states that intent of the employer may be established if "the injury is substantially certain to occur." Cox presented the testimony of Gerald Rennell, an expert in safety systems, who opined that removal of the tension control switch made it "substantially certain" that an injury such as that sustained by Cox would occur. Thus, the jury had evidence upon which to base its finding of intent.

Stolle's second argument is that the tension control switch was not a safety guard, but merely a control device. Rennell testified that in his expert opinion the switch was a safety guard. Rennell repeatedly stated that the switch had *no* purpose other than to stop the bridle rolls from turning when workers had to move past the barrier guards to unsnag aluminum strips. From this evidence, the jury could have reasonably concluded that the switch's sole purpose was to protect workers from being dragged into the rollers when performing the inevitable task of freeing tangled aluminum strips.

Stolle's third argument is that there was no evidence that it deliberately bypassed the tension control switch. Rennell testified that the bypass could not have occurred accidentally, but had to have been a deliberate action by a person skilled in electrical wiring. There was also evidence from which the jury could have found that it was someone acting on behalf of Stolle who bypassed the wire. Various Stolle workers testified that the tension control switch had not

functioned for at least fifteen years. Charles Williams, supervisor of Cox's assembly line and a member of the Stolle team that investigated the coil coater after the injury, concluded that based upon those investigations it was most likely that a Stolle electrician bypassed the switch. Eugene Durnell, an electrician for Stolle, testified that while he had not bypassed the tension control switch in question, he had on prior occasions bypassed other switches throughout the plant in a similar manner at Stolle's request. Finally, only Stolle had a motive to bypass the switch since, if working properly, it would have ruined any aluminum remaining in the ovens when placed in the "off" position.

Stolle's final argument is that Cox failed to prove that bypassing the tension control switch proximately caused his injury since no one knew if the switch was in the "on" or "off" position at the time. It is clear from the testimony that everyone on the line either knew that the switch had not worked for fifteen years or thought that there was no way to stop the bridle rollers from turning when trying to pull aluminum out of the accumulator. We see no reason why it is necessary to take precautions that are known to be ineffective or that were essentially hidden from workers by an employer's deliberate actions. It is axiomatic that the law does not require a vain act. Surely Stolle would not argue that if it had removed the emergency shut-off switch from the wall, someone would have had to run to the space where it had been and swat at thin air when tragedy struck, before a plaintiff could recover. In regard to the bridle rollers, the tension control switch was the only shut-off switch when workers had to move close to the machine to extricate entangled aluminum. Bypassing the switch effectively removed it for all practical purposes. If the bridle

rollers had not been turning, Cox could not have been injured. Testimony of the line supervisor established that if the switch had worked, he would have made it a practice to turn it to the "off" position in these situations in order to protect his crew. However, he knew, and had known for fifteen years, that the switch did not function, and therefore did not attempt to use it on the night in question. This constitutes enough evidence upon which a jury could reasonably find probable cause.

Both of Cox's assignments of error in his cross-appeal as well as Stolle's first assignment of error are found to be well-taken and will be sustained. Stolle's second and third assignments of error are found to be not well-taken and will be overruled. The trial court having lacked subject matter jurisdiction, its judgment will be reversed, and this cause will be remanded with instructions that it be dismissed.

*Judgment reversed and cause remanded.*

WOLFF, P.J., and GRADY, J., concur.