**The STATE of Ohio**

**v.**

**PARKER.**

Hamilton County Municipal Court.

No. 93–CRB–26957.

Decided March 18, 1994.

*Lisa C. Allen,* Assistant City Prosecutor, for the prosecution.

*Julius F. Sanks,* for the defendant.

---

MARK P. PAINTER, Judge.

## I

### Facts

The defendant, James Parker, was charged with selling alcohol to a minor, in violation of R.C. 4301.69. Defendant pled not guilty and a bench trial was held. The facts of this case are rather simple and not in dispute. On August 1, 1993, Sherry Walker, who was at the time twenty years old, entered Annie's, a Cincinnati nightclub.

Annie's uses a system common to many bars and nightclubs to identify the age of persons who enter the bar. Patrons are stopped at the door and are asked to present a piece of identification with a photo on it, typically a driver's license. All patrons are then given a hand stamp indicating whether or not they are eligible to be served alcoholic beverages. Those individuals who are over the age of twenty-one are eligible to be served alcoholic beverages and receive a "high stamp," which on this night was a rectangular-shaped black stamp, approximately two and one-half inches long and three-fourths of an inch wide. Those individuals who are under twenty-one are given a "low stamp," which was a circular red stamp over two inches in diameter. Servers are then instructed to check the hand stamp and only serve alcoholic beverages to those patrons with a "high stamp."

Walker showed the personnel at the door a Florida driver's license that had been altered to indicate that she was over twenty-one years of age. Due to the negligence, or perhaps recklessness of the doorperson, Walker received a "high

stamp" and entered Annie's. While at Annie's, Walker ordered two drinks, one for herself and one for a friend who also had a "high stamp," from the defendant James Parker, a bartender.

Walker was then approached by Gary Brown, a Cincinnati police officer, who, after an investigation, determined that Walker had used an altered identification and charged her with purchasing alcohol while under age, in violation of R.C. 4301.632. Defendant Parker was then cited for selling alcohol to an underage person, in violation of R.C. 4301.69. Walker subsequently pleaded "no contest" and was found guilty and sentenced in a separate proceeding.

## II

### Culpability

The defendant is charged with violating R.C. 4301.69, which prohibits selling alcohol to a minor. A violation of R.C. 4301.69 is a misdemeanor of the first degree, and is punishable by up to one hundred eighty days in jail and/or a $1,000 fine. It is silent as to the requisite *mens rea.*

There is a considerable difference of opinion among courts in Ohio as to whether the standard of strict liability or the standard of recklessness should be applied to a defendant's conduct when charged with violating R.C. 4301.69. This court addressed this very issue in *State v. Sleppy* (1992), 62 Ohio Misc.2d 394, 599 N.E.2d 441, where it summarized existing law and concluded that the appropriate standard under R.C. 4301.69 is that of recklessness. Strict liability in a criminal law context involving non-reckless employees is, quite simply, anathema to the American system of justice.

This court is cognizant that the Court of Appeals for Hamilton County has held that R.C. 4301.69 imposes a strict liability standard. See *State v. Burke* (Dec. 19, 1979), Hamilton App. No. C–790028, unreported. More recently, that court declined, or neglected to reconsider *Burke,* simply citing it as authority without any elaboration—the court neither cited nor distinguished other more recent cases. See *State v. Moran* (Nov. 4, 1992), Hamilton App. No. C–920279, unreported. However, both cases are, quite rightly, unpublished. Pursuant to S.Ct.R.Rep.Op. 2(G)(1), an unpublished opinion of the court of appeals shall not be considered controlling authority in the judicial district in which it was decided (or anywhere else for that matter). Therefore, the flawed reasoning of *Burke* is not binding on and will not be followed by this court. This court holds then, pursuant to *Sleppy,* that in order for a defendant to be found guilty of violating R.C. 4301.69, the prosecution has the burden of proving that the defendant's conduct was reckless beyond a reasonable doubt.

## III

### Recklessness

██ The question this court must now decide is whether the defendant's conduct in this case rises to the level of recklessness. R.C. 2901.22 defines "recklessly" as follows: "A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist."

In this case, Walker had her identification checked at the door where a "high stamp" was placed on her hand. The prosecution points out that the defendant testified that he did not remember specifically serving Walker and therefore cannot remember if he checked her hand stamp; thus, the perils of honest testimony. Walker and Officer Brown testified that the defendant did not check Walker's hand stamp. However, the defendant testified that he always checks hand stamps before serving alcohol to a customer.

Checking a hand stamp is something that can be done without anyone noticing. A hand stamp can be checked whenever the customer's hands are in plain view of the bartender. During a normal transaction, the customer's hands are in plain view of the bartender when ordering, waiting, and paying for the alcoholic beverage, unless the customer has a "low stamp" or no stamp and is deliberately hiding his/her hands from the bartender. The bartender can check the customer's hand stamp with a simple glance anytime during the transaction without the customer or anyone else noticing.

There is no evidence that Walker intentionally withheld her hands from the plain view of the defendant. Additionally, since Walker had a "high stamp," she had no reason to hide her hands from the defendant. Given the fact that it's extremely unlikely that the customer will be aware that his/her hand stamp has been checked, this court finds it highly improbable that a police officer witnessing this transaction from some distance away could tell whether or not the bartender has checked a customer's hand stamp.

Defendant Parker testified that he always checks the hand stamps before serving alcohol to customers. On the night in question defendant served several hundred customers and it is understandable that he does not remember serving Walker. However, the fact that defendant does not remember serving Walker does not mean that he did not check her hand stamp. In this case, even if defendant did not check Walker's hand stamp, defendant's conduct would not have been reckless because Walker's hand stamp was proper and would have

indicated to defendant that Walker was entitled to be served. In this case, checking Walker's hand stamp would have been a vain act, and the law does not require a vain act. See *Cox v. Stolle Corp.* (1990), 56 Ohio App.3d 79, 564 N.E.2d 1135; *Georgekopoulos v. Vasilopoulos* (1984), 26 Ohio App.3d 43, 26 OBR 216, 498 N.E.2d 165. However, if Walker had a "low stamp" or no stamp and the defendant did not check and served her anyway, his conduct surely would have been reckless; this court has convicted bartenders in that situation.

This court cannot find beyond a reasonable doubt that the defendant did not check for Walker's hand stamp and the court finds that defendant did not act in a reckless manner. Defendant testified that he always checks hand stamps which, as shown above, cannot be disproved beyond a reasonable doubt by the prosecution. Additionally, Walker had been given a "high stamp" at the door, so that when the defendant checked Walker's hand stamp during this purchase, he saw the "high stamp" and served Walker. Defendant's reliance on the "high stamp" was not reckless. There is nothing in the defendant's conduct that reflects a heedless indifference to the consequences of his actions. This court will not make criminals of people who work for a living simply because the state is confused about the proper remedy, and cannot or will not enforce the problems in the administrative context.

## IV

### Appropriate Remedy

Under current state law, permit holders are held accountable through civil proceedings aimed at economically penalizing permit holders for violations of state liquor laws. Whenever a police officer or liquor control agent witnesses a violation of the liquor laws or rules of the liquor commission, they have the authority, pursuant to Ohio Adm.Code 4301:1–161(A), to cite the permit holder before the Ohio Liquor Control Commission. The Ohio Liquor Control Commission then has the authority, pursuant to R.C. 4301.25, to suspend or revoke a permit holder's liquor permit for any violation of the liquor laws or rules of the liquor commission. Hearings are conducted by the liquor commission to determine whether or not the liquor permit should be suspended for a period of time or revoked. These hearings are civil in nature under procedures set forth in Ohio Adm.Code 4301:1–1–65, and there is no reason why a strict liability standard is not appropriate. The suspension or revocation of an establishment's liquor permit creates a severe economic hardship on the establishment. This economic hardship is surely sufficient incentive for the establishment to police itself and its employees or agents.

Currently, it is the practice of police agencies and liquor control agents witnessing an alleged violation of the liquor laws to file criminal charges against the server and to send notice to the central enforcement office and the appropriate district enforcement office to begin the civil proceedings against the permit holder. While this practice is surely appropriate in many cases—in many cases the servers or other employees may commit a criminal violation—it may not always be the best way to proceed. In fact, this practice has its own inherent risks. Under R.C. 4301.991, if the employee is found not guilty in a criminal proceeding where the standard is recklessness beyond a reasonable doubt, no civil sanctioning of the permit holder based on the same violation of the liquor law is permitted—even though the civil proceeding would be under a much different, and easier burden for the state to meet.

It is clear that the law provides for a penalization of the permit holder through the civil suspension and revocation proceedings. If the system set up by the permit holder to prevent purchases by underage persons is reckless, or recklessly operated, ultimate responsibility needs to be placed on the permit holder, not the servers, for it is the permit holder who profits from the sale of alcoholic beverages and who has *control* of the employees and the *systems* used to avoid sale to underage customers. Instead, the servers and bartenders, who are often blameless victims caught in the middle, find themselves facing criminal charges. The practice of attempting to make criminals of the non-reckless servers violates reason, criminal law theory, and common sense.

The governmental purpose to be achieved—the prohibition of the sale alcoholic beverages to underage persons—is best achieved by regulating the permit holder. The punishment for a failure in any system used to avoid the sale to underage customers should fall on the permit holder.

## V

### Conclusion

The appropriate standard to be applied to a defendant's conduct who is charged under R.C. 4301.69 is that of recklessness. In this case, the court finds that defendant's conduct was not reckless beyond a reasonable doubt. Therefore, the defendant is found not guilty.

*Defendant not guilty.*