The STATE of Ohio, Appellee,

v.

CHUMBLEY, Appellant.

[Cite as *State v. Chumbley* (1998), 128 Ohio App.3d 323.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–970236.

Decided June 12, 1998.

*Fay D. Dupuis,* Cincinnati City Solicitor, *Terrence R. Cosgrove,* Cincinnati City Prosecutor, and *Charles A. Rubenstein,* Assistant City Prosecutor, for appellee.

*Mitchell B. Goldberg, Thomas L. Stachler* and *Michael A. Ruh, Jr.,* for appellant.

---

HILDEBRANDT, Presiding Judge.

We have, *sua sponte,* removed this case from its original setting on the accelerated calendar.

The defendant-appellant, Jennifer L. Chumbley, appeals from her conviction of sale of liquor to an underage person. Chumbley was the bartender at "Oscar's," a bar located in downtown Cincinnati. Oscar's used a hand-stamp system to identify whether its patrons were of legal age to purchase alcohol. A "low" stamp was placed upon the hand of an underage patron, and a "high" stamp was placed upon the hand of a patron of legal age.

Upon entering the bar on October 10, 1996, twenty-year-old Kevin Boehmer had his hand marked with a "low" stamp indicating that he was underage. Boehmer then purchased a can of beer from Chumbley without showing any type of identification. At some time after this purchase, Boehmer transferred a "high" stamp onto his hand from another person who was of legal age. Boehmer then purchased a pitcher of beer and two "shots" of alcohol from Chumbley. Again, Boehmer did not present any form of identification. Cincinnati Police Officer Timothy Campbell observed the transactions. After the second transaction, an officer approached Boehmer and ascertained his age while another approached Chumbley. Officer Campbell testified that, at the scene, Chumbley indicated that

she did not recall serving Boehmer. Chumbley was charged under R.C. 4301.69(A) for Boehmer's second purchase of beer.

At trial, Chumbley testified on direct examination that Boehmer approached her twice to purchase alcohol. She stated that she "assumed" that Boehmer was of legal age because he initially approached the bar in the company of an employee of the bar. She stated that she did not see a stamp on Boehmer's hand at the time of his first purchase, but that she did see a "high" stamp on his hand at the time of the second purchase. Chumbley stated that Boehmer did not provide any form of identification. She admitted that she had received alcohol-management training and was aware of the risk of selling alcohol to an underage person by not checking identification.

In her sole assignment of error, Chumbley argues that this court should reverse its previously held position that R.C. 4301.69(A) is a strict-liability offense. See *State v. Burke* (Dec. 19, 1979), Hamilton App. No. C–790028, unreported; *State v. Moran* (Nov. 4, 1992), Hamilton App. No. C–920279, unreported, 1992 WL 691953; *State v. McCall* (Sept. 29, 1995), Hamilton App. No. C–950045, unreported. We are not persuaded and affirm the judgment of the trial court for the following reasons.

In addition to the position held by this court, the overwhelming majority of courts that have visited this issue have found that R.C. 4301.69(A) is a strict-liability offense. See *State v. Jones* (1989), 57 Ohio App.3d 155, 567 N.E.2d 313; *State v. Cheraso* (1988), 43 Ohio App.3d 221, 540 N.E.2d 326; *Markho, Inc. v. Ohio Liquor Control Comm.* (Dec. 16, 1997), Franklin App. No. 97APE04–476, unreported, 1997 WL 782001; *D. Michael Smith Enterprises, Inc. v. Ohio Liquor Control Comm.* (Oct. 29, 1997), Summit App. No. 18332, unreported, 1997 WL 775658; *State v. Spicer* (Mar. 30, 1994), Greene App. No. 93–CA–55, unreported, 1994 WL 102097; *Willie's Joint Venture v. Ohio Liquor Control Comm.* (Sept. 28, 1993), Franklin App. No. 93AP–497, unreported, 1993 WL 381214; *State v. Wilson* (June 13, 1991), Delaware App. No. 90–CA–38, unreported, 1991 WL 115985; *State v. McConnell* (Nov. 2, 1988), Champaign App. No. 88–CA–5, unreported, 1988 WL 120127; *State v. Ohl* (May 27, 1988), Geauga App. No. 1390, unreported, 1988 WL 57335; *State v. Smith* (Oct. 14, 1987), Summit App. No. 13094, unreported, 1987 WL 18681; *State v. Breiding* (Feb. 4, 1987), Summit App. No. 12770, unreported, 1987 WL 6173; *State v. Riley* (Apr. 15, 1987), Summit App. No. 12733, unreported, 1987 WL 9841; *State v. Won* (Dec. 31, 1986), Summit App. No. 12658, unreported, 1986 WL 15277. The only contrary authorities in this state are three municipal court cases.[1]

---

1. *State v. Sleppy* (1992), 62 Ohio Misc.2d 394, 599 N.E.2d 441; *State v. Parker* (1994), 66 Ohio Misc.2d 1, 642 N.E.2d 66; *State v. McGhee* (1984), 12 Ohio Misc.2d 18, 12 OBR 490, 468 N.E.2d 400.

■ Although R.C. 4301.69(A) is a strict-liability offense, R.C. 4301.639 provides an affirmative defense to a defendant who is charged with a violation, but who has, in good faith, accepted false identification. R.C. 4301.639 provides that one may not be found guilty if the court finds that all of the following occurred at the time of purchase: (1) the purchaser exhibited a driver's license or identification card that showed him to be of legal age to purchase intoxicating liquor; (2) the seller of the liquor made a bona fide effort to ascertain the true age of the purchaser by checking the identification at the time of purchase; and (3) the seller had reason to believe that the purchaser was of legal age. Even if Chumbley had claimed the affirmative defense, only the third requirement could have been demonstrated.

Chumbley argues that since there is no specified culpable mental state in R.C. 4301.69(A), the state must prove recklessness in order to sustain a conviction. As listed above, this court and all other appellate courts in this state have repeatedly declined to revisit this issue. Additionally, in light of the diligent, affirmative acts that must be demonstrated in order to establish an affirmative defense under R.C. 4301.639, the legislature could not have intended recklessness as the culpable mental state of R.C. 4301.69. Finally, the facts of the case at bar are distinguishable from those upon which the contrary municipal court decisions are based.

■ We, therefore, continue to hold that R.C. 4301.69(A) is an offense of strict liability and affirm the judgment of the trial court. We note, however, that even if this court were to apply recklessness as the requisite culpable mental state, Chumbley's testimony clearly established that she acted recklessly as defined in R.C. 2901.22(C) in committing the offense.

*Judgment affirmed.*

SHANNON, J., concurs.

PAINTER, J., dissents.

RAYMOND E. SHANNON, J., retired, of the First Appellate District, sitting by assignment.

PAINTER, Judge, dissenting.

Making criminals of those who do not have a criminal intent flies in the face of common sense, fundamental fairness, and the purpose of the criminal law.

Imposing a standard of "strict liability" for a crime means that a person is guilty of a criminal offense even if the act was unintentional. If there were strict

liability for shoplifting, a young mother whose child, without the mother's knowledge, slipped candy into her purse at the grocery could go to jail.

I must first take issue with the majority's recitation of the facts. Chumbley was charged only with selling a pitcher of beer to Boehmer. During this transaction, Boehmer had a "high" stamp, which Chumbley saw and relied on before pouring the beer. The majority mixes in facts from an earlier transaction, where Chumbley allegedly served Boehmer a can of beer before he replaced the "low" stamp on his hand with a "high" stamp. But Chumbley *was not charged* under R.C. 4301.69(A) for this earlier transaction. The same goes for the two shots of liquor that Boehmer purchased with the pitcher—they had been drunk before the police could confiscate them.

Disingenuously, the majority attempts to weave in Chumbley's conceivably reckless actions that are *not* the subject of this conviction to distinguish this case from the three published municipal court decisions, *Parker*,[2] *Sleppy*,[3] and *McGhee*,[4] which are directly on point. I believe the law still is that one may not be convicted of a crime unless charged. So I will confine my discussion to the facts of the actual case.

The trial court here found that Chumbley had relied on the red stamp on Boehmer's hand "as she was trained to do, and she did it in good faith," and further stated a wish to be free to find the defendant not guilty. The trial judge had the right instinct—that justice requires a not-guilty finding in this case. Meting out criminal records to those acting "in good faith" is repugnant to our system of justice.

In *Sleppy* and *Parker*, as a municipal court judge, I held that a recklessness standard must be applied to R.C. 4301.69(A) because the section does not specify the degree of culpability and does not plainly indicate a purpose to impose strict liability.[5] The majority ignores this rule and also ignores R.C. 2901.04(A), which provides that criminal statutes are to be strictly construed against the state and liberally construed in favor of the accused. I stand by my former decisions. More recent case law has further persuaded me that they were rightly decided.

Last year, in *State v. McGee*[6] (not to be confused with *McGhee*), the Ohio Supreme Court determined that recklessness was an essential element of the

---

2.  *State v. Parker* (1994), 66 Ohio Misc.2d 1, 642 N.E.2d 66.

3.  *State v. Sleppy* (1992), 62 Ohio Misc.2d 394, 599 N.E.2d 441.

4.  *State v. McGhee* (1984), 12 Ohio Misc.2d 18, 12 OBR 490, 468 N.E.2d 400.

5.  See R.C. 2901.21(B).

6.  *State v. McGee* (1997), 79 Ohio St.3d 193, 680 N.E.2d 975, syllabus.

crime of endangering children under R.C. 2919.22(A).[7] Though the statute begins with the ubiquitous "No person * * * shall" language that many courts, such as those cited by the majority for support, use as evidence that the legislature intended to impose strict liability, the Ohio Supreme Court held that the child-endangering statute does not plainly indicate such an intent. Many courts—and this case provides the perfect example—have grossly overreached by finding that various statutes "plainly" indicate that the legislature intended to impose strict liability. As Judge Hoffman has astutely observed, "I am unaware of any crime that does not contain the 'No person shall * * *' language."[8] Courts strain to find that statutes "plainly" indicate that the legislature intended to impose strict liability. But the more the strain, the less the legislature's intent is plain. If the legislature wishes to impose strict liability, it need only say so.

I would not protest as loudly if jail time were not a possible penalty for a violation of R.C. 4301.69(A). Strict-liability offenses promulgated to mold behavior through the imposition of small fines have been accepted throughout this country.[9] But I believe that most offenses that carry the possibility of jail time as punishment should include a *mens rea* requirement, with a minimum requirement of criminal negligence.[10] Certainly, courts should be much more reluctant to subject those of our citizens who do not have a "guilty mind" to jail time than to impose a fine. Because a violator of R.C. 4301.69(A) can receive jail time, this statute should not be a strict-liability crime.

The majority is indeed correct that precedent in this district favors its position. This district has been consistently wrong for many years, with untold hundreds of innocent and hard-working men and women suffering the consequences. While we could never make up for the decades of mistreatment of our citizens, we should now stop this egregious misapplication of the law.

The majority decision today means in practice that anyone who works her way through college by working in an establishment that serves alcohol will likely incur a criminal record. This result would be bad enough if the law mandated it,

---

**7.** See, also, *State v. Adams* (1980), 62 Ohio St.2d 151, 16 O.O.3d 169, 404 N.E.2d 144, paragraph one of the syllabus (holding recklessness an essential element of endangering children under R.C. 2919.22[B][2] ).

**8.** *State v. Wilson* (June 13, 1991), Delaware App. No. 90–CA–38, unreported, 1991 WL 115985 (Hoffman, J., dissenting).

**9.** Sayre, Public Welfare Offenses (1933), 33 Colum.L.Rev. 55 (noting that society's interests outweigh the interests of an individual subjected to a light penalty for violating a strict-liability statute).

**10.** See *State v. Hazelwood* (Alaska 1997), 946 P.2d 875, 890 (Compton, C.J., dissenting), citing *State v. Rice* (Alaska 1981), 626 P.2d 104 (Matthews, J., concurring).

but the law requires exactly the opposite. Criminals enough we have, without creating them wholesale by statutory misinterpretation.