KNEISLEY, APPELLEE, v. LATTIMER-STEVENS COMPANY, APPELLANT.
SCHMIDT ET AL., APPELLEES, v. MAST-LEPLEY SILO, INC., APPELLANT.

[Cite as Kneisley v. Lattimer-Stevens Co. (1988), 40 Ohio St. 3d 354.]

(Nos. 87-1678 and 88-397—Submitted November 14, 1988—Decided December 30, 1988.)

*Steven J. Edwards,* for appellee in case No. 87-1678.

*Timothy P. McCarthy,* for appellant in case No. 87-1678.

*Cross & Rose Co., L.P.A.,* and *James O. Cross,* for appellees in case No. 88-397.

*Duvin, Cahn & Barnard, Thomas H. Barnard* and *Thomas J. Wiencek,* for appellant in case No. 88-397.

*Per Curiam.* In *Van Fossen* v. *Babcock & Wilcox Co.* (1988), 36 Ohio St. 3d 100, 522 N.E. 2d 489, we addressed the constitutionality of the retroactive application of R.C. 4121.80(G). Having determined therein that such application violated the ban on retroactivity of Section 28, Article II of the Ohio Constitution, we now turn to R.C. 4121.80 (D) and make a similar holding.

*Van Fossen* set forth a two-step

analysis which first addressed legislative intent. Referring to R.C. 1.48, the decision stated that absent a clear indication of legislative intent to the contrary, a statute may only be applied prospectively. See, also, *Kiser* v. *Coleman* (1986), 28 Ohio St. 3d 259, 28 OBR 337, 503 N.E. 2d 753. R.C. 4121.80(H) applies R.C. 4121.80, as a whole, to causes of action "pending in any court on the effective date of this section." In *Van Fossen, supra,* we construed this language as evincing a "clearly expressed legislative intent that R.C. 4121.80 could be applied retrospectively." *Id.* at 106, 522 N.E. 2d at 496.

Having so concluded, we must next determine whether R.C. 4121.80 (D) is substantive or remedial. While a remedial law is exempt from the constitutional prohibition on retroactivity, a substantive law is not. *Gregory* v. *Flowers* (1972), 32 Ohio St. 2d 48, 52-53, 61 O.O. 2d 295, 297, 290 N.E. 2d 181, 184. Examples of statutes which are considered substantive are those which do any of the following:

"[I]mpairs or takes away vested rights, * * * affects an accrued substantive right, * * * imposes new or additional burdens, duties, obligations or liabilities as to a past transaction * * * creates a new right out of an act which gave no right and imposed no obligation when it occurred, * * * creates a new right, * * * or gives rise to or takes away the right to sue or defend actions at law. * * *" (Citations omitted.) *Van Fossen, supra,* at 107, 522 N.E. 2d at 497.

In successfully challenging retroactivity below, the appellees argued that R.C. 4121.80(D) eliminated their right to a jury trial, thus affecting an accrued substantive right. Appellants collectively attack both the nature and existence of the right as well as the statute's effect upon it. Appellants' challenges are not well-taken.

The right to a jury trial, where it exists, is substantive, not procedural. *Cleveland Railway Co.* v. *Halliday* (1933), 127 Ohio St. 278, 188 N.E. 1, paragraph one of the syllabus. There is no *right* to a jury trial, however, unless that right is extended by statute or existed at common law prior to the adoption of our state Constitution. *Belding* v. *State, ex rel. Heifner* (1929), 121 Ohio St. 393, 169 N.E. 301.

The modern concept of intentional tort evolved from the common-law action of trespass. 1 Restatement of the Law 2d, Torts (1965) 25, Section 13. Blackstone, in 3 Commentaries on the Laws of England (1778) 207, Chapter 12, defines "trespass" as:

"* * * [A]ny transgression or offense against the law of nature, of society, or of the country in which we live; whether it relates to a man's person, or his property. * * * [A]ny misfeasance or act of one man whereby another is injuriously treated and damnified, is a transgression or trespass * * *." "The action in trespass from its origin has been intended to provide a remedy for an injury to property or to the person. In modern terminology it is an action for damages." Deiser, The Development of Principle in Trespass (1917), 27 Yale L.J. 220, 221.

Commentators generally acknowledge the longstanding and increasingly significant role of the jury in trespass actions at common law. As noted by Deiser, "[t]he assessment of damages plays a great part in the development of the action of trespass. And as the jury later became the machinery by which this task was performed, * * * [w]ithout the jury, there might have been no common law * * *." *Id.* at 223. See, also, Woodbine, The Origins of the Action of Trespass (1924), 33 Yale L.J. 799, at 806, fn. 32 at 807, and fn. 34 at 808; Woodbine, The Origins of the Action of Trespass (1925), 34 Yale L.J. 343, at 346, fn. 40 at 353.

These common-law jury principles were presumably first formally extended to Ohioans by the Northwest Ordinance of 1787 which declared that the territory's inhabitants "shall always be entitled to the benefits * * * of the trial by jury." Schedule Section 14, Article II. *Allison* v. *McCune* (1846), 15 Ohio 726, 730, decided five years prior to the adoption of our state Constitution, emphasized that "[t]he common law of England, imported by our ancestors, as is said, is *in force in Ohio.*" (Emphasis *sic*.) We thus determine that the right to a jury trial in trespass actions existed in this state at common law, and now extends to its progeny — in this case, intentional tort actions.

Having determined both that a right exists herein and that this right is substantive, we turn finally to the allegation that this right has not been invaded by statute. Upon review, we reject the suggestion that the term "court" encompasses the jury so as to preserve the latter's role, and find that R.C. 4121.80(D) destroys the right altogether.

Absent ambiguity, statutory language is not to be enlarged or construed in any way other than that which its words demand. *Hough* v. *Dayton Mfg. Co.* (1902), 66 Ohio St. 427, 64 N.E. 521. The court in *State, ex rel. Hawke,* v. *Le Blond* (1923), 108 Ohio St. 126, 133, 140 N.E. 512, 517, did not include the jury within its definition of "court," as being an "incorporeal, political being, composed of one or more judges, who sit at fixed times and places, attended by proper officers, pursuant to lawful authority, for the administration of justice." An overall legislative recognition of the distinction between the two terms is well exemplified in R.C. Chapter 2315, which governs trial procedure. That chapter specifically differentiates between the two terms, and where jury involvement is contemplated, the statute expressly so states. More specifically, such cognizance is displayed within the workers' compensation statutes themselves. For example, R.C. 4123.519 provides, in part, that "[t]he court, *or the jury* under the instructions of the court, if a jury is demanded, shall determine the right of the claimant to participate or *to* continue to participate in the fund * * *." (Emphasis added.) It thus appears that in assigning liability determinations under R.C. 4121.80(D) to the "court" instead of to the court *or* jury, the General Assembly intended a bench trial only.

Consistent with this rationale, we declined in *Armstrong* v. *Marathon Oil Co.* (1987), 32 Ohio St. 3d 397, 513 N.E. 2d 776, to give "court" the broad interpretation urged by appellants therein. In *Armstrong*, we determined that the provision in R.C. 1701.85(B) for stock share valuation by the "court" "[q]uite clearly * * * dispenses with the requirement of a jury trial." *Id.* at 419, 513 N.E. 2d at 796. In keeping with this decision and the principles noted previously, we similarly refuse to interpret the present statutory language as permitting jury participation. We determine that a substantive right has been abridged and thus hold that R.C. 4121.80(D) may not be retroactively applied to the cases at bar.

Accordingly, the judgments of the courts of appeals are affirmed.

*Judgments affirmed.*

MOYER, C.J., SWEENEY, LOCHER, HOLMES, WRIGHT and H. BROWN, JJ., concur.

DOUGLAS, J., concurs separately.

DOUGLAS, J., concurring. While I continue to adhere to the position I ex-

pressed in my dissenting opinion in *Taylor* v. *Academy Iron & Metal Co.* (1988), 36 Ohio St. 3d 149, 155-163, 522 N.E. 2d 464, 470-477, and my concurring opinion in *Kunkler* v. *Goodyear Tire & Rubber Co.* (1988), 36 Ohio St. 3d 135, 140-141, 522 N.E. 2d 477, 482-483, to wit: that R.C. 4121.80 has no application to issues that are outside the employment relationship and, hence, are not employer-employee matters, I nevertheless concur with the majority that, in any event, R.C. 4121.80(D) cannot be applied retroactively.

The Seventh Amendment to the United States Constitution states:

"In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law."

Section 5, Article I of the Ohio Constitution states:

"The right of trial by jury shall be inviolate, except that, in civil cases, laws may be passed to authorize the rendering of a verdict by the concurrence of not less than three-fourths of the jury."

It would seem that these provisions are clear and that any action of the General Assembly which attempts to limit or abrogate the right to trial by jury would be a clear constitutional violation.

This is certainly not a new thought. In opposing ratification of the proposed Constitution for the United States of America at the Virginia Ratification Convention in June 1788, Patrick Henry based his opposition, in part, on the fact that the proposed Constitution did not contain guarantees of individual freedoms similar to those of the Virginia Declaration of Rights which had been adopted on June 12, 1776. One of the rights which he set forth as being "inviolable and sacred" was the ancient right of common law by which "the trial of all facts is decided by a jury of impartial men from the immediate vicinage." 3 Elliot's Debates on the Federal Constitution (2 Ed. 1907) 445-446.

Despite the opposition of Patrick Henry, Virginia ratified the Constitution with the stipulation that a Bill of Rights would be prepared for presentation to the first Congress. Among the Bill of Rights advocated by the Virginians led by Patrick Henry was one which became the basis for the Seventh Amendment. They proposed: "That, in controversies respecting property, and in suits between man and man, the ancient trial by jury is one of the greatest securities to the rights of the people, and is to remain sacred and inviolable." *Id.* at 658.

With Patrick Henry's support, the Seventh Amendment was approved by Congress on September 25, 1789 and was ratified by the required number of states by December 15, 1791. As we move to consider R.C. 4121.80 and especially subsection (D), we should remember this history and how hard fought was the battle to secure the right to trial by jury.