STRONG et al., Appellants,

v.

KILLBUCK VALLEY MOSQUITO ABATEMENT SANITARY DISTRICT, Appellee.

[Cite as *Strong v. Killbuck Valley Mosquito Abatement Sanitary Dist.* (1996), 108 Ohio App.3d 441.]

Court of Appeals of Ohio,
Ninth District, Wayne County.

No. 95CA0048.

Decided Jan. 24, 1996.

*Wayne Zacour,* for appellee.

*William Anfang III,* for appellants.

---

BAIRD, Presiding Judge.

Plaintiffs-appellants, a group of property owners residing within the territory of defendant-appellee, the Killbuck Valley Mosquito Abatement Sanitary District, present this appeal from the decision rendered in the Wayne County Court of

Common Pleas. We affirm in part, reverse in part, and remand the matter to the trial court for further proceedings.

Appellants raise four assignments of error. The first of these is generally concerned with the legality of the formation of the district itself, the second and third address the propriety of actions taken after the formation of the district, and the fourth raises a constitutional challenge as an alternative argument.

## I

"The trial court erred as a matter of law by finding that the Killbuck Valley Mosquito Abatement Sanitary District (KVMASD) was properly formed and operating pursuant to Ohio Revised Code Sections 6115.01 through 6115.79."

The Killbuck Valley has a long history of mosquito infestation. In response to a petition signed by residents of the area, the district was organized by court order, pursuant to R.C. 6115.04, on July 12, 1993.[1] According to the facts as stipulated in the record, a board of directors was duly appointed, and an official plan for the district was formulated. A public hearing was held, at which no objections were voiced. Appellee asserts that each of these measures complied with the requirements outlined in R.C. 6115.05, 6115.08, 6115.101, and 6115.16, and that the official plan was approved by the Environmental Protection Agency as required by R.C. 6115.16 and adopted by the board of directors pursuant to R.C. 6115.18.

The record indicates that the requirements for valid formation of the district were met. A petition with the required signatures was submitted (R.C. 6115.05), a hearing was held thereon at which no objections were raised, and the trial court duly organized the district (R.C. 6115.08). Appellants' first assignment of error is overruled, insofar as it relates to the formation of the district. As to the second part of the assignment of error regarding the operation of the district, this assignment of error is sustained, for the reasons outlined in our discussion of the second and third assignments of error below.

---

1. This case appears to be one of first impression in Ohio and rests almost exclusively on principles of statutory construction. Pursuant to legislative decree, words and phrases utilized in Ohio statutes are to be construed "according to the rules of grammar and common usage." R.C. 1.42. Regardless of the policy implications, plain and unambiguous language may not be ignored. *Bd. of Edn. v. Fulton Cty. Budget Comm.* (1975), 41 Ohio St.2d 147, 156, 70 O.O.2d 300, 305, 324 N.E.2d 566, 572; *Guear v. Stechschulte* (1928), 119 Ohio St. 1, 7, 162 N.E. 46, 48. In *Kneisley v. Lattimer–Stevens Co.* (1988), 40 Ohio St.3d 354, 357, 533 N.E.2d 743, 746, the Ohio Supreme Court explained that "[a]bsent ambiguity, statutory language is not to be enlarged or construed in any way other than that which its words demand."

## II

"The trial court erred as a matter of law by finding that the board of appraisers, pursuant to O.R.C. Section 6115.29 to 6115.36, must appraise only the benefits which will accrue to real property and not the damages."

## III

"The trial court erred as a matter of law by denying injunctive relief to stop the use of tax money as requested by appellants/movants on the basis of O.R.C. section 6115.44."

We next consider whether the assessment of taxes against the property within the district, in order to implement the official plan, was properly undertaken. We conclude that it was not.

The record indicates that the requirements for the formation of the district, as already discussed, were met. Once a plan has been adopted for such a district, R.C. 6115.48 permits the board of directors to levy a proportionate assessment against each parcel of real property in the district, in order to distribute the costs of abating the mosquito hazard among those who benefit from such action by the district. On March 3, 1995, the property owners of the district were assessed in excess of $430,000 for this purpose.

However, once a district has been organized, but prior to the levying of assessments to implement the official plan, R.C. 6115.29 requires the court to appoint a three-member board of appraisers. This board of appraisers, a separate body from the board of directors, is obligated by R.C. 6115.30 to "appraise the benefits of every kind to all real property or other property within the district, which will result from the organization of the district and the execution of the official plan * * * [and] appraise all damages which may, because of the execution of the official plan, accrue to real or other property within the district, which damages shall also represent easements acquired by the district for all of the purposes of the district."

The board of appraisers is to evaluate the costs and benefits to each affected parcel of property, and its evaluation will determine the assessment to that parcel. R.C. 6115.48(A) and (B). According to R.C. 6115.30, the appraisal must include consideration of damages to the property, if the appraisers conclude that there are any.

This appraisal must be undertaken and accomplished prior to any general assessment. The evaluations of the appraisers are to be reported to the board of directors, the property owner, and the trial court, and the property owner must be given the opportunity to object to the appraisal; the trial court must resolve

all such objections before the official plan may be entirely implemented. R.C. 6115.33 through 6115.38. The appraisal procedure is to be funded by a special preliminary tax, which is separate and distinct from the later general property assessment and may not exceed three-tenths of a mill on the assessed valuation of each property. R.C. 6115.46.

It is only "*[a]fter* the list of real property, with the appraised benefits as approved by the court" has been filed with the secretary of the district that the board of directors may "levy upon all real property, *upon which benefits have been appraised,* an assessment of such portion of the benefits" "on each tract of land or other property in the district *in proportion to the benefits appraised, and not in excess thereof.*" (Emphasis added.) R.C. 6115.48(A) and (B). The trial court may also order such changes in the plan as it deems appropriate given the appraisers' report.

■ The clear language of the statute contemplates the possibility that some parcels of property within a district will receive more or less benefit than others, and that those parcels should be assessed a greater or smaller proportion of the costs, as determined by the appraisal, in exchange for their degree of benefit. Some parcels may not benefit, and so should be excluded from the district; some which would benefit but were not originally included in the district may also be considered, and the official plan modified accordingly. R.C. 6115.36. The appraisal process serves to inform the taxing authority which parcels should be assessed a greater burden in exchange for their benefits; it is required because the legislature apparently does not assume, as did the district and the trial court, that all parcels automatically derive equal benefit from the district.[2]

■ Thus, until the appraisal process has been satisfactorily completed, uniform assessment of the property to meet expenses of implementing the official plan is inappropriate. Modification of the official plan prior to assessment due to the findings of the board of appraisers is specifically provided for in the statute. R.C. 6115.16. If objections to appraisal values, or appeals from the court's decision as to those objections, are taken (R.C. 6115.35), work may proceed on

---

2. The district relies upon R.C. 6115.44 and its provision for correction of error in the appraisal process. However, that statute requires a trial court to first have "proof that expense has been incurred which is a *proper* charge against the property." (Emphasis added.) *Id.* Moreover, when faced with a defective or improperly made appraisal, the court is to "appraise the proper benefits accordingly," *id.,* and render a finding as to the appropriate assessment. In this case, there was no such proof that the assessments were proper, and the trial court not only erroneously concluded that only actual physical damage should be considered, but apparently also concluded that all parcels automatically derived equal benefit, without conducting any actual appraisal. Finally, the statute requires the defective appraisal to be remedied "promptly and without delay." The district's reliance on this provision, therefore, is misplaced, since its requirements were clearly not satisfied.

446

other parcels within a district, but general assessment may not be made against a parcel until the objections or appeals are resolved by the court, particularly where the work involves a taking of or damage to property. R.C. 6115.41 and 6115.48(A).[3]

Despite the appointment of a board of appraisers, the parties stipulated that the appraisers never held a meeting, elected a chairman, or conducted any appraisals of any parcels of property in the district. No investigation as to the appropriate allocation of the burdens or benefits to each property was ever conducted. The record indicates, instead, that each parcel was simply assessed at an equal millage rate, which was then applied to the property's recorded assessed value to determine the amount of taxes actually assessed against the property. Thus, although some parcels may have been assessed different total amounts, this was a result of differences in their assessed values, not an indication of their relative benefit from the district.

The application of the millage rate to the assessed value of the property yielded an assessment amount, which was then added to the property owner's tax bill. These monies were collected and, apparently, spent, to defray the costs of implementation of the official plan. The same millage rate was applied to each parcel, without any appraisal as to which parcels might benefit more or less than others.

In this case, not only was there a total failure on the part of the board of appraisers to fulfill its obligations, but the trial court allowed the imposition of the costs of implementing the official plan without any appraisal or notice to the property owners. The district contends that, pursuant to a subsequent order of the trial court, an appraisal process is now underway. This placing of the cart before the horse clearly violates the plain language of the statute, particularly R.C. 6115.30 and 6115.48.

Moreover, the trial court erred in interpreting the statute to require only consideration of the benefits to property and stating that "if there aren't any * * * actual physical damage[s] to property," then an appraisal of easements or potential damages was not required. These conclusions are in direct contradiction to the plain language expressed in R.C. 6115.30 ("The board of appraisers shall appraise all damages which may, because of the execution of the official plan, accrue to real or other property within the district * * *.") and R.C.

---

**3.** The district also cites R.C. 6115.41, which states that appeals shall not delay "any action" under the statute. However, this appeal is actually geared toward ensuring that *additional and appropriate* actions are taken according to the mandate of the statute, not to delaying actions already legitimately in progress. To the extent that the statute itself requires certain steps to be taken which were not accomplished in this case, the district's reliance on this clause is also misplaced.

6115.48. The board of directors automatically acquires certain powers over district properties upon formation of the district (R.C. 6115.17 through 6115.24), which materially affect the property rights of all property owners within the district. The board is given the rights to obtain easements and enter upon and inspect any lands within a district (R.C. 6115.17), to make various alterations in infrastructure (R.C. 6115.18), to award contracts (R.C. 6115.20), to condemn property (R.C. 6115.22), to make and enforce various regulations and abate violations thereof (R.C. 6115.24), and to exercise a right of dominant eminent domain (R.C. 6115.21), all without the consent of the property owners.

■ Moreover, the complete neglect of the appraisal process and the arbitrary uniform-rate allocation of the costs of operating the district cannot be considered harmless. The lack of notice or opportunity to object constituted a material denial of justice to affected property owners, resulting as it did in an assessment from which they had no opportunity to appeal until after the fact. R.C. 6115.44.

In summary, we hold that, while the district was properly established, and thus need not be dissolved, the appraisal process was never accomplished, and the uniform millage rate assessment against the properties within the district to effectuate implementation of the official plan was thus premature and inappropriate. Therefore, until the appraisal process is satisfactorily completed, no assessments should be made against the parcels of property in the district beyond that authorized by R.C. 6115.46 for payment of preliminary expenses.

■ We note that appellants are not seeking a return or repayment of the monies collected pursuant to the original general assessment in March 1995. They are, however, seeking an injunction against any additional such assessments absent compliance by the district with the statutory requirements set forth above, including appraisals. We believe such relief to be appropriate in this instance. Appellants' second and third assignments of error, and the second part of their first assignment of error, are sustained,[4] and the trial court is directed to enter the appropriate order, pursuant to R.C. 6115.44, in accordance with this decision.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

DICKINSON and MAHONEY, JJ., concur.

EDWARD J. MAHONEY, J., retired, of the Ninth Appellate District, sitting by assignment.

---

4. Appellants' fourth assignment of error alleges that, if the trial court's interpretation of the statute was correct, then the statute is unconstitutional. Since we have already held that the trial court's interpretation was not correct, we need not address this assignment of error.