OPINION
{¶ 1} Appellants, Lowell and Carolyn Abbe ("the Abbes"), appeal pro se from the judgment of the Portage County Court of Common Pleas granting appellees, The Cadle Company, et al., (collectively "Cadle") and Terry Moser, et al., (collectively "COMSOT") summary judgment. Also at issue is the trial court's alleged sua sponte waiver of appellants' right to a jury trial on the issue of damages. For the reasons that follow, we affirm.
 {¶ 2} The Cadle Company is an entity which engages in the purchase of non-performing loans from lenders towards the end of collecting upon the same. In 1999, the Cadle Company purchased two such loans from Bank One pertaining to two separate properties: a farm located at 5746 Waterloo Rd., Portage County, Ohio and a campground, located at 672 Stroup Rd., Portage County, Ohio. On September 18, 2000, a foreclosure sale was held on behalf of the Cadle Company. As a result of the sale, COMSOT purchased the camp ground and Cadle retained the farm property. After the sale, plaintiffs, including the Abbes, refused to leave the newly purchased properties. On December 27, 2000, Cadle and COMSOT obtained a Writ of Possession and gave plaintiffs notice they were required to leave the properties. Appellants still refused to leave and, on January 18, 2001, the Portage County Sheriff's Department executed the Writ of Possession removing plaintiffs from the properties. The instant litigation arose from this removal.
 {¶ 3} The procedural history, while convoluted, deserves some attention in order to provide a fair understanding of the basis for the instant appeal. On August 16, 2001, Maria Abbe, et al., filed a complaint for damages arising from the foregoing factual overlay. The named defendants were the Portage County Sheriff's Department, Duane W. Kaley, Portage County Sheriff, Portage County Board of Commissioners, Daniel Cadle, the Cadle Company, Buckeye Retirement Company, Terry L. Moser, Scott Bennett, and COMSOT Properties, Ltd. The complaint alleged, inter al. that the enumerated defendants wrongfully attached and converted certain unspecified personal property belonging to appellants when they were evicted. Plaintiffs complained, subsequent to being forcibly removed, they made "numerous attempts" to retrieve their personal property, but were denied access by defendants. Accordingly, appellants sought an injunction to preserve the status quo and to reclaim their personal property as well as compensatory and punitive damages. Plaintiffs endorsed their complaint with a jury demand pursuant to Civ.R. 38(B). All defendants filed answers to plaintiffs' complaint.
 {¶ 4} On August 22, 2001, plaintiffs moved the trial court for a preliminary injunction to maintain the status quo on the property pending final judgment. COMSOT consented to the preliminary injunction. On August 30, 2001, the magistrate issued a decision establishing its nature and character: The injunction permitted plaintiffs to remove their personal property from the campground on September 14 and September 15, 2001, between the hours of 10:00 a.m. and 4:00 p.m. upon proof of identification and ownership. Accordingly, COSMOT was enjoined from "auctioning, selling, removing, or otherwise disposing of the personal property of Plaintiffs located at the camp ground prior to 4:00 p.m. on Saturday, September 15, 2001." However, any property remaining on the property after 4:00 p.m. on September 15, 2001 would be deemed abandoned and COMSOT could dispose or remove it at its discretion. Many, but not all, individuals arrived on the designated days to retrieve their belongings.
 {¶ 5} On November 14, 2001 Cadle filed a motion for summary judgment on plaintiffs' complaint and on January 18, 2002, COMSOT filed the same. On January 25, 2002, plaintiffs filed their motion for summary judgment. All motions were eventually denied.[1]
 {¶ 6} On July 19, 2002 plaintiffs filed a new motion for summary judgment. On July 24, 2002, plaintiff's filed an amended complaint which included new party plaintiffs, Lowell and Carolyn Abbe. On July 26, 2002, plaintiffs filed a supplemental motion for summary judgment. On August 5, 2002, Cadle filed its motion in opposition to plaintiffs' motion for summary judgment and, on August 9, 2002, Cadle filed its answer to plaintiffs' amended complaint with counterclaims against new party-plaintiffs' Lowell and Carolyn Abbe including, inter al., abuse of process, frivolous conduct in a civil action, and conversion. Cadle did not demand a jury trial with respect to its counterclaims. On August 27, 2002, Cadle filed its motion for summary judgment asserting plaintiffs' amended complaint failed to set forth a genuine issue of material fact for litigation.
 {¶ 7} The Abbes filed a reply to Cadle's counterclaims with denials and defenses. The Abbes also included what they characterized as a "counterclaim" against Cadle stating the "complaint" (Cadle's counterclaims) constituted "malicious prosecution" and "abuse of process."
 {¶ 8} On August 14, 2002 COMSOT filed its motion in opposition to plaintiffs' motion for summary judgment as well as its own motion for summary judgment. On August 20, 2002, COMSOT filed its answer to plaintiffs' amended complaint.
 {¶ 9} On December 20, 2002, the trial court granted COMSOT's motion for summary judgment with respect to plaintiffs' claims of bailment, unjust enrichment, and conversion, but reserved its ruling on plaintiffs' theft claim. In a separate judgment entry, the trial court granted Cadle's motion for summary judgment against the original plaintiffs on all counts set forth in their amended complaint. On the same date, the Abbes filed their motion for summary judgment against Cadle to which Cadle responded on January 8, 2003. On January 17, 2003, the Abbes' motion for summary judgment was denied.
 {¶ 10} On December 23, 2003, Cadle filed its motion for summary judgment against the Abbes which was granted on February 2, 2004. In its judgment entry, the court determined Cadle was entitled to summary judgment on all the Abbes' remaining claims. The court also determined there was no genuine issue of material fact(s) to be litigated regarding the Abbes' liability on the counterclaims asserted by Cadle. In its November 19, 2004 judgment entry, the trial court denied Cadle's motion for summary judgment on damages indicating there were genuine issues of material fact surrounding the damages to which Cadle was entitled. The case was ultimately set for a pretrial conference on May 20, 2005 at which the Abbes failed to appear in violation of Portage County Loc.R. 10.01.
 {¶ 11} In the meantime, on April 13, 2005, COMSOT moved the trial court for summary judgment against plaintiffs on the remaining theft claim. On May 10, 2005, the trial court granted COMSOT's motion.
 {¶ 12} Finally, on May 24, 2005, a bench trial was held on the amount of damages to which Cadle was entitled. Cadle presented evidence and testimony as to their damages. Carolyn Abbe appeared pro se and cross-examined Cadle's witnesses. Abbe rested without presenting any evidence on her behalf. On June 9, 2005, the court filed its judgment entry awarding Cadle compensatory damages in the amount of $49,576.21 together with punitive damages in the amount of $99,152.42. The Abbes filed a timely notice of appeal and assign the following errors for our review:
 {¶ 13} "[1.] The trial court's ruling granting summary judgment to [COMSOT] was against the weight of the evidence and contrary to: [sic] previous findings of the court, the Ohio Revised Code, and Rules of Civil Procedure.
 {¶ 14} "[2.] The trial court's ruling of finding `no just cause for delay" [sic] in its granting of summary judgment to the Cadle defendants was contrary to the Ohio Rules of Civil Procedure and common law of the state of Ohio.
 {¶ 15} "[3.] The trial court's failure to dismiss the Cadle defendants' claim for amount of damages was contrary to [the] Ohio Rules of Civil Procedure, and as to some damages, the basis was contrary to law.
 {¶ 16} "[4.] The trial court's denial of a duly requested jury trial was contrary to Ohio Rules of Civil Procedure, and the7th Amendment to the U.S. Constitution, as to at least one of the appellants."[2]
 {¶ 17} Under their first assignment of error, the Abbes argue the trial court erred in awarding summary judgment to COMSOT[3]
 {¶ 18} An appellate court reviews a trial court's order granting summary judgment de novo. Hapgood v. Conrad, 11th Dist. No. 2000-T-0058, 2002-Ohio-3363, at ¶ 13. "A reviewing court will apply the same standard a trial court is required to apply, which is to determine whether any genuine issues of material fact exist and whether the moving party is entitled to judgment as a matter of law." Id. Initially, the moving party shoulders the burden of conclusively demonstrating no genuine issues of material fact. When a court reviews the motion, the nonmoving party enjoys the benefit of having the evidence viewed in a light most favorable to its position. See, Dresher v. Burt
(1996), 75 Ohio St.3d 280, 293. However, the nonmoving party is not entitled to proceed to trial through asserting bare allegations; it must set forth some significant, probative evidence to show a material issue of fact exists to support its claim. Id., see also, Celotex Corp. v. Catrett (1986),477 U.S. 317, 324. If the nonmoving party fails to meet its reciprocal burden, the moving party is entitled to summary judgment. Id. at 323.
 {¶ 19} Initially, the Abbes seem to argue the trial court could not grant them a preliminary injunction yet eventually determine COMSOT was entitled to summary judgment. We see no necessary inconsistency between the two, separate orders.
 {¶ 20} In its August 30, 2001 judgment entry, the court stated: "Defendant COMSOT Properties, Ltd. ("COMSOT"), has consented to the entry of a preliminary injunction in Plaintiffs' favor." The court then granted appellants' motion for the preliminary injunction and ordered:
 {¶ 21} "COMSOT, and its officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them who [have] actual notice of this order, are hereby preliminarily enjoined from auctioning, selling, removing, or otherwise disposing of the personal property of Plaintiffs located at the camp ground prior to 4:00 p.m. on Saturday, September 15, 2001."
 {¶ 22} The court went on to grant plaintiffs access to the campground between 10:00 a.m. and 4:00 p.m. on Friday, September 14, 2001 and Saturday, September 15, 2001, to allow them to remove their personal belongings. The court also ordered that any personal property remaining at the campground after Saturday, September 15, 2001 would be deemed abandoned and COMSOT would be permitted to remove or dispose of it.
 {¶ 23} The court's order allowing plaintiffs to obtain their property is not inconsistent with its ultimate entry of summary judgment against them and has no necessary bearing on whether they set forth material issues of fact to warrant a trial on their claims against COMSOT. To the contrary, the order of preliminary injunction could serve as tacit support for the court's eventual award of summary judgment in COMSOT's favor: In their January 25, 2002 motion for summary judgment, the Abbes admitted they did not take advantage of the order of preliminary injunction due to conditions beyond their control, e.g. bad weather, the death of one of their sons, and inability to obtain necessary transportation. To the extent they failed to remove their belongings prior to 4:00 p.m. on September 15, 2001, COMSOT was entitled to dispose of or remove anything remaining. Accordingly, the Abbes failure to assert their rights pursuant to the August 30, 2001 order severely undermines their allegations that COMSOT willfully and/or maliciously deprived them of their property. In this respect, the Abbes failure to exercise their rights under the order served to support the trial court's award of summary judgment in COMSOT's favor.
 {¶ 24} We next turn to the Abbes' substantive allegations to determine whether the trial court properly rendered summary judgment. In their amended complaint, plaintiffs set forth numerous "counts" pertaining to COMSOT, each of which are founded in appellants' general position that COMSOT wrongfully deprived them of their personal property. Specifically, plaintiffs asserted they were entitled to an injunction to obtain any personal property allegedly located on the campground.[4]
Plaintiffs further alleged COMSOT (1) was unjustly enriched; (2) violated a bailment contract; (3) engaged in theft and conversion of appellants' personal property; and (4) should be responsible for punitive damages.
 {¶ 25} In support of their allegations, plaintiffs attached various affidavits to their motion for summary judgment. The affidavits in question, however, suffered from various defects: Those that were not vague or ambiguous did not correspond to the requirements of Civ.R. 56(E). Thus, on its face, plaintiffs' motion for summary judgment, failed to allege material facts that would demonstrate the COMSOT defendants wrongfully deprived them of their property.
 {¶ 26} First, plaintiffs failed to set forth sufficient evidence to make a claim for unjust enrichment. Unjust enrichment is an equitable principle which states that no one should retain a benefit which would result in inequity and injustice. EuclidAsphalt Paving Co. v. Pricom Asphalt Sealcoating, Inc., 11th Dist. No. 2004-L-175, 2005-Ohio-7049, at ¶ 52. In their complaint, motions for summary judgment, and affidavits, plaintiffs make conclusory assertions that COMSOT "willfully" and "maliciously" deprived them of "numerous personal items" whose nature and character are never disclosed. Plaintiffs neither stated the precise quality and quantity of these personal items nor did they allege COMSOT was somehow benefited through their alleged retention. Even when viewed in plaintiffs' favor, we see no material issue of fact requiring litigation regarding the claim that COMSOT was unjustly enriched.
 {¶ 27} Next, to establish the existence of a bailment contract, a party must demonstrate: "(1) the contract of bailment, (2) delivery of the bailed property to the bailee, and (3) failure of the bailee to redeliver the property at the termination of the bailment." Elkin v. JB Robinson Jewelers,
11th Dist. No. 2004-L-035, 2005-Ohio-1414, at ¶ 9. Plaintiffs failed to provide significant, probative evidence of any of these elements.
 {¶ 28} The record indicates COMSOT purchased the campground property at a foreclosure sale, plaintiffs refused to move after the sale, and appellants were evicted. Terry Moser, a principal of COMSOT and a named defendant, testified that, subsequent to the eviction, COMSOT "set up at least four (4) separate days on which individuals could retrieve their personal property." Moreover, COMSOT eventually consented to an injunction which allowed plaintiffs to reclaim the personalty allegedly remaining on COMSOT's property. Plaintiffs did not assert and the record does not suggest the parties ever entered a contract for bailment or that plaintiffs delivered their property to COMSOT or its agents. Although the plaintiffs contended COMSOT deprived them of their personal property, the record demonstrates COMSOT formally consented, via judicial order, to allowing plaintiffs to reclaim any belongings allegedly remaining on the property. Viewing the facts most favorably in plaintiffs' favor, there are no material issues of fact suitable for trial on the bailment issue.
 {¶ 29} Next, the tort of conversion involves any exercise of control wrongfully exerted over the personal property of another inconsistent with or in denial of that party's rights. Rider v.Rider (Mar. 31, 2000), 11th Dist. No. 98-T-0202, 2000 Ohio App. LEXIS 1429, at 7-8. Here, COMSOT purchased the property in question at a foreclosure sale. After plaintiffs were removed, COMSOT permitted the parties to re-enter the property and reclaim any personal property they may have failed to remove. While plaintiffs argued COMSOT both destroyed and stole a "large portion of personal property," they fail to enumerate what was destroyed or stolen. Moreover, in their January 25, 2002 motion for summary judgment, plaintiffs acknowledged they had an opportunity, via COMSOT's consent to the preliminary injunction, to reclaim their property. However, plaintiffs admitted they did not take advantage of the injunction due to "various conditions beyond [their] control." Even when viewed in plaintiffs favor, the evidence indicates plaintiffs' allegations address no particular personal property that was allegedly converted or stolen; moreover, even were we to assume appellant's vague allegations were sufficient, they fail to demonstrate COMSOT wrongfully exerted control over their alleged property. Appellants' therefore failed to create a genuine issue of material fact going to each element of their conversion claim.
 {¶ 30} Finally, punitive damages are used to punish malicious behavior. Cappara v. Schisley, 85 Ohio St.3d 403, 408, 1999-Ohio-278. Punitive damages may be awarded if the injuries prompting them flow from a course of conduct related to the tortious acts or omissions of the defendant(s). Moskovitz v. Mt.Sinai Med. Ctr. (1994), 69 Ohio St.3d 638, paragraph one of the syllabus, 1994-Ohio-324. Here, plaintiffs' contentions that COMSOT acted maliciously in depriving them of their property are not supported by the record. Further, as we believe there are no issues of material fact to be litigated regarding appellants' allegations, there are no tortious acts on which to premise any such damages against appellee COMSOT, et al.
 {¶ 31} Appellants' first assignment of error is overruled.
 {¶ 32} In their second assignment of error, the Abbes argue the trial court erred when it determined its February 2, 2004 judgment entry was a final, appealable order. In response, Cadle contends the Abbes' failed to attach a copy of the judgment entry from which they appeal and thus the instant assignment of error is not properly before the court.
 {¶ 33} Initially, we note Cadle's argument presumes providing a copy of an appealed judgment entry is a jurisdictional requirement; it is not. Pursuant to App.R. 3(A), the only jurisdictional requirement for a valid appeal is the timely filing of a notice appeal. Transamerica Ins. Co. v. Nolan
(1995), 72 Ohio St.3d 320, syllabus. Nonetheless, Cadle's argument is not completely without merit: To properly comply with the appellate rules, an appealing party must attach a copy of the judgment entry being appealed. See, App.R. 3(D) and Loc.R. 5(D). Although the Abbes' failed to properly attach the judgment entry in question, we shall still address the merits of their contention.
 {¶ 34} In its February 2, 2004 judgment entry, the trial court granted summary judgment in favor of Cadle on all issues pertaining to liability. In its judgment entry, the court stated:
 {¶ 35} "IT IS FURTHER ORDERED that as this judgment will affect a substantial right of Plaintiffs and New Party Defendant, the Court determines that this is a final appealable order, and there is no just reason for delay of appeal of this entry of judgment."
 {¶ 36} The trial court's statement is incorrect. While the February 2, 2004 judgment entry disposed of any issue of liability, the issue of damages pertaining to Cadle's counter-claim still remained to be litigated. Summary judgment on the issue of liability by itself, without resolving the question of damages, is interlocutory in character and neither final nor appealable. Davis v. Finch (1961), 115 Ohio App. 104, syllabus;Cammack v. V.N. Holderman Sons (1973), 37 Ohio App.2d 79,80-81. Here, the trial court proclaimed its judgment entry a "final appealable order" and also inserted specific Civ.R. 54(B) language with the expectation the judgment could then be appealed.[5] However, "[a] trial court cannot transform that which is not, by its nature, a final appealable order, into the same by mere appellation." Summit Petroleum, Inc. v. K.S.T.Oil Gas Company, Inc. (1990), 69 Ohio App.3d 468, 470. Thus, the trial court's order determining appellants' liability alone was an interlocutory order and could not be considered a final order subject to appeal.
 {¶ 37} That said, on May 24, 2005, the trial court held a hearing on damages. On June 9, 2005, the court released its judgment entry awarding specific compensatory and punitive damages to the Cadle Defendants. The June 9, 2005 order disposed of all remaining issues and was therefore a final, appealable order. While the trial court inappropriately earmarked its February 2, 2004 judgment entry a final, appealable order, any error is harmless as neither the Abbes, nor any other party, were prejudiced by the court's misstatement. The Abbes' second assignment of error is without merit.
 {¶ 38} The Abbes' third assignment of error argues the court erred by failing to dismiss Cadle's claim for damages because Daniel C. Cadle, "an individual defendant, as well as designated corporate representative, president, major stockholder[,] and affiant upon whose affidavit and deposition the court relied in determining" damages failed to appear.
 {¶ 39} While he did not physically attend the May 24, 2005 hearing on damages, the record shows Mr. Cadle's attorney appeared on his behalf. Civ.R. 45, the "subpoena rule," provides a means to compel a witness to appear for a hearing. The record does not show, and the Abbes do not allege that they subpoenaed Mr. Cadle for the damages hearing. Accordingly, Mr. Cadle was not required to appear. The Abbes' third assignment of error is therefore overruled.
 {¶ 40} In their final assignment of error, the Abbes argue the trial court violated their right to a trial by jury on the issue of damages when it conducted a bench hearing on the matter.
 {¶ 41} In Ohio, the right to a jury trial is "inviolate," substantive, and fundamental. See, Section 5, Article I of the Ohio Constitution; See, also, Kneisley v. Lattimer-Stevens Co.
(1988), 40 Ohio St.3d 354, 356. However, there is no "right" to a jury trial unless that right is extended by statute or existed at common law prior to the adoption of our state Constitution. Id., citing, Belding v. State ex rel. Heifner (1929), 121 Ohio St. 393.
 {¶ 42} R.C. 2311.04, the statute addressing what may be tried to a jury and what may be tried to the bench, provides:
 {¶ 43} "Issues of law must be tried by the court, unless referred as provided in the Rules of Civil Procedure. Issues of fact arising in actions for the recovery of money only, or specific real or personal property, shall be tried by a jury, unless a jury trial is waived or unless all parties consent to a reference under the Rules of Civil Procedure.
 {¶ 44} "All other issues of fact shall be tried by the court, subject to its power to order any issue to be tried by a jury, or referred."
 {¶ 45} Here, the Abbes' answer to Cadle's counterclaims and their own counterclaims sought further monetary relief. The court granted summary judgment in favor of Cadle regarding liability but denied Cadle's motion for summary judgment on the issue of damages. The trial court subsequently held a bench trial on the issue of damages awarding Cadle $49,576.21 in compensatory damages and $99,152.42 in punitive damages.
 {¶ 46} To the extent they complied with Civ.R. 38 setting forth their jury demand at the outset of the litigation and on their answer and counterclaims, the Abbes allege their right to have the issue of damages tried to a jury was violated when the court tried the matter to the bench. We disagree.
 {¶ 47} Initially, the Abbes' failed to object to the bench trial on the issue of damages. A party may waive his or her right to a jury trial, even after filing a jury demand, by participating in a trial before the court without objecting to the lack of a jury. Foremost Ins. Co. v. Gimbel Agency, Inc.
(Aug. 29, 1997), 11th Dist. No. 96-P-0203, 1997 Ohio App. LEXIS 3879, at 10-11, citing Nenadal v. The Landerwood Co., (May 12, 1994), 8th Dist. No. 65428, 1994 Ohio App. LEXIS 2079, at 9-10; see, also Cavanaugh Bldg Corp. v. Liberty Electric Co. (Apr. 28, 1999), 9th Dist. No. 19146, 1999 Ohio App. LEXIS 1989, at 6-7.
 {¶ 48} Here, the Abbes' had an opportunity to timely object to the bench trial immediately before or during the trial itself. Under the circumstances, therefore, the Abbes are estopped from alleging this error on appeal as it could have been addressed by the trial court at an earlier stage.
 {¶ 49} Further, even had the Abbes' objected, their jury demand may have been waived by their failure to appear at the May 20, 2005 pretrial. Specifically, all issues of liability were adjudicated in Cadle's favor via the trial court's February 2, 2004 award of summary judgment. Accordingly, the Abbes' allegations that Cadle was liable to them were nullified by the court's February 2, 2004 judgment entry. The only remaining issue requiring determination was the quantity and quality of damages to which Cadle was entitled. For purposes of the damages hearing, Cadle had the burden of moving forward to establish damages. Hence, at the time of the damages trial, Cadle was the functional plaintiff and the Abbes', as the parties defending against Cadle's assertions, were functional defendants.
 {¶ 50} With this in mind, the Abbes failed to appear at a pretrial conference on May 20, 2005. Portage County Court of Common Pleas' Loc. R. 10.01 provides: "At the pretrial conference all parties and their counsel must appear." Loc.R. 10.04 provides:
 {¶ 51} "At plaintiff's request, if neither the defendant nor his/her counsel appears for pretrial conference, the Court may hear evidence and decide a case to the court; or, where a case [is] before a jury, the Court may accept plaintiff's waiver of the jury and hear evidence and decide the case."
 {¶ 52} Although the Abbes endorsed their complaint and answer to Cadle's counterclaims with a jury demand pursuant to Civ.R. 38, they failed to appear at the pretrial conference. Under such circumstances, the plaintiff, i.e. Cadle, was entitled to request the court to hear evidence and decide the case. Therefore, we see no problem with the court moving forward with a bench trial on the issue of damages.
 {¶ 53} Appellants' final assignment of error is overruled.
 {¶ 54} For the foregoing reasons, appellants' four assignments of error are overruled and the judgment of the Portage County Court of Common Pleas is hereby affirmed.
Ford, P.J., concurs,
O'Toole, J., concurs in part and dissents in part with a Concurring/Dissenting Opinion.
[1] Both Cadle's and COMSOT's motions for summary judgment were overruled in separate judgment entries dated February 19, 2002. Plaintiffs' motion for summary judgment was denied in a judgment entry dated February 26, 2002.
[2] For purposes of clarity, we note that the Abbes' first assignment of error addresses alleged errors relating only to COMSOT while their second, third, and fourth assignments of error address alleged errors relating only to Cadle.
[3] The Abbes' first assignment of error asks us to perform a manifest weight analysis of the trial court's summary judgment entry in favor of COMSOT. We do not examine a summary judgment entry using a manifest weight standard and therefore, in its current form, the Abbes' initial error is improperly assigned.
[4] As discussed above, the trial court disposed of this issue by way of its August 30, 2001 judgment entry which shows COMSOT agreed to permit appellants to collect any property belonging to them on September 14, 2001 and September 15, 2001.
[5] Civ.R. 54(B) addresses judgments in cases involving multiple claims or multiple parties. It permits a court to enter final judgment "as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay." Here, Civ. R. 54(B) is not applicable because a judgment can be final only where it adjudicates both liability and damages. Thus, no individual party had a final judgment issued on its claim(s).